# WEST POINT IRRIGATION COMPANY, Appellant, v. MORONI AND MT. PLEASANT IRRIGATION DITCH COMPANY, JULIUS CHRISTIANSEN, AND PETER CHRISTIANSEN, Respondents.

Obstruction and Diversion of Water — Action for Injunction — Necessary Parties. Injunction — Facts Necessary to Maintain. Water Rights — Upper and Lower Appropriators. Equitable Action — Conflicting Testimony — What Necessary to Support Findings.

*Obstruction and Diversion of Water — Action for Injunction — Necessary Parties.*

In an action brought solely to restrain defendants from obstructing the flow of certain waters, where it appears that during the period complained of, other persons, not parties to the action, diverted water from the same stream, to such an extent that it can not be sufficiently shown that, but for the acts of the parties not sued, no injury would have resulted to the plaintiff, an injunction will not be granted.

*Injunction — Facts Necessary to Maintain.*

In order to successfully maintain an injunction proceeding, it must appear that the acts of those sued caused the injury, and that if such acts are continued, damages will follow.

*Water Rights — Upper and Lower Appropriators.*

Before an appropriator of water can be enjoined for diversion by an appropriator farther down the stream. it must satisfactorily appear that had the water been allowed to pass down the stream it would have reached plaintiff's ditch.

*Equitable Action — Conflicting Testimony — What Necessary to Support Findings.*

In an equitable action, although the testimony may have been

conflicting, if there is testimony to support the findings, it must be held sufficient on appeal.

(Decided March 29, 1900.)

Appeal from the Seventh District Court, San Pete County, Hon. Ogden Hiles, *Judge.*

Action for an injunction to restrain defendant from diverting certain waters and for damages. From a judgment for defendants, plaintiff appealed. *Affirmed.*

*W. K. Reid, Esq.*, and *Messrs. Rawlins, Thurman, Hurd & Wedgwood*, for appellant.

The statutes of Utah, in force at the time the decision was rendered in this case, were, as now, very liberal in respect to amendments for the furtherance of justice. Sec. 3256, Compiled Laws of Utah, 1888; see also Secs. 3181, 3184, 3192, id.; Ency. of Plead. & Prac., Vol. 1, pp. 466–7, 484.

" It is not usual, nor is it proper, for a court of chancery to dismiss a bill for want of parties defendant without allowing complainant leave to amend." Hawes on Parties, Sec. 103, pp. 292, 293; Bliss on Code Pleading, Sec. 429; Pomeroy's Remedial Rights, Secs. 422, 565, 566.

*Messrs. Richards & Varian*, for respondents.

It appears that many persons not parties to this suit have been diverting and using the waters of the river, with the seepage increase, and, therefore, it is impossible to determine that any use by the respondents has injured the appellant.

We say, if in a case like this it appears that others, not parties, are diverting the water to such an extent that it can not be shown that but for the acts of the parties sued, no injury would result to plaintiff, he can not have an injunction. *Hillman* v. *Newington*, 57 Cal., 64.

The rule as to injunctions is well settled, and the general principles upon which courts proceed are clearly stated by this court. *McGregor* v. *Mining Co.*, 14 Utah, 54; *Crescent Co.* v. *Silver King*, 17 Utah, 460, and cases cited.

The limitation upon the power of amendment agreed upon by all the courts is that the amendment shall not bring a new cause of action. Bliss Cide Pleading, Sec. 429.

Upon the whole case, it is certain that all of the findings are supported by the evidence, and in accord with the rule of this court, they will not be disturbed. *Klopenstine* v. *Hays*, 57 Pac., 712; S. C., 20 Utah, 45.

### STATEMENT OF FACTS.

The plaintiff in its complaint claims, among other things, that it is the owner of one half of all the water of Sanpitch River, San Pete County, flowing between what is known as the Rock Dam, near Moroni City, and the head of plaintiff's ditch, which is about five miles below, from the 15th day of November of each year to the first day of July of the succeeding year, and all of said water flowing therein during the remainder of the season; that during the years 1893, 1894, and 1895, defendants, by means of dams and ditches in said river above the Rock Dam, diverted large portions of said water from the river and prevented the same from flowing down to plaintiff's ditch and dams, to plaintiff's damage, and prays for an injunction.

The defendants deny the allegations in the complaint and claim the ownership of the water, and plead the statute of limitations.

So far as material, the trial court found, in substance:

3d. That in the year 1861 Rock Dam was completed in the bed of the river, and has since been maintained as a tight dam during the irrigation season, with the intention to divert at that point the waters of the river, and during the dry season all the water at said dam, and the ditch connected therewith have been diverted and taken out.

4th. That the water appropriated by the plaintiff was of the overflow and surplus water coming into the river below the Rock Dam.

5th. That in 1860, settlers at Moroni appropriated all the water of the river during the dry season for irrigating their lands, and thereafter continued to use the same by common consent and under agreed rules for many years, until the organization of the defendant corporations, for the benefit of said citizens and appropriators, and distributed the water above said S. E. Field and Canal dam, and said corporations succeeded to all the rights of said citizens, and ever since have controlled and distributed said water by the consent and authority of said original settlers and appropriators.

6th. That defendant corporations have no interest in the Rock Dam or the ditches connected with said dam, but other persons have owned and controlled the same.

7th. That each year since the organization of the plaintiff corporation, other persons, not parties to this suit, during the dry and irrigating season have diverted the waters of said river flowing through and seeping in below the said Rock Dam and above the plaintiff's dam. That the dry season ordinarily commences each year about the 15th or middle of June.

8th. That each year since the organization of the plaintiff corporation, other persons, not parties to this suit, have diverted the waters of said river during the dry season, from above the said Rock Dam.

9th. That owing to the configuration of the country, and the character of the soil in the vicinity, a large proportion of the entire quantity of the water appropriated and diverted from the river, by the defendant corporations, and other parties, not parties to this suit, each season, finds its way back into the river bed at or near the said Rock Dam by seepage; that said seepage water has not been restrained or diverted by either of the defendants.

10th. That the defendant, the Moroni & Mt. Pleasant Company, did, in the year 189–, by means of an enlarged and practically a new ditch, divert large quantities of the waters of said river at a point on the northeast quarter of Section 15, Tp. 14 S., range 4 E., near the east section line thereof, and controlled and distributed the same for the purposes of irrigating a large area of new lands; that there were several dams and ditches below this said point of diversion and above said Rock Dam, older in time than West Point, the plaintiff's ditch and dam, and a large proportion of the water theretofore used in said older ditches, upon the completion of the Moroni & Mt. Pleasant Company's ditch were transferred to, and diverted on the other lands by means of said new ditches, since 1894; that during the time of the use by the Moroni & Mt. Pleasant Company of the said new dam and ditch, each year since its completion, during the dry season, the several dams and ditches below the point of diversion, and above the Rock Dam, were diverting the waters of the river to the extent of their capacities.

11th. That the quantity of water flowing each season in the said river has been increased from year to year to the

present time by means of the appropriation of water from other sources, and a large increased area of irrigation above the dam and ditches of the defendant companies, at, near, and adjacent to, the town of Fairview, which said increased flow is used by all the persons appropriating water from the stream above the plaintiff's dams and ditches; but I am unable to determine from the evidence, what proportion thereof is, or has been, appropriated by either of the defendant companies.

12th. That all of the waters of said river flowing therein above the Rock Dam, are, during each irrigating season, appropriated and used by the defendant corporations, and number of other persons, not parties to this suit, some prior in time and right, and others subsequent in time and right to the plaintiff corporation. That neither of the defendant corporations have, during the years 1893, 1894, or 1895, acting in concert or otherwise, diverted from the said Sanpitch River, any of the waters thereof, to which the plaintiff was entitled, or to its damage or injury; that plaintiff's stockholders have lost no crops and have suffered no injury by reason of the use of the waters of said river by the defendant corporations.

Upon such findings, so made, a decree was entered in favor of the defendants.

The plaintiff pleads and alleges the insufficiency of the evidence to justify the findings.

After stating the facts, MINER, J., delivered the opinion of the court:

The relief prayed in the complaint was for an injunction to prevent the defendants from obstructing the flow of water of Sanpitch River to plaintiff's dam and ditches. It was not an action to quiet title. Plaintiff claimed the water flowing south of the Rock Dam to his ditch. The

S. E. Field and Canal Dam is about two miles up the river and east of the Rock Dam. Defendant's main ditch is taken out just above the latter dam, and runs in a westerly course down the river, and waters a large quantity of land. Between these two dams are five ditches owned by other persons, not parties to this action, which carried water from the river during the period mentioned in the complaint. It also appears that the defendants maintain an enlarged ditch intersecting the river below the S. E. Field and Canal Dam through which water is taken, and some of the water which formerly ran through their other ditches was transferred into this enlarged ditch, and is used by the defendants.

It does not appear that the plaintiff made any motion to amend his complaint, as to parties, either at the close of his case or that of the defendants. The case was submitted to the court upon the pleadings and the testimony, and the injunction was thereafter denied.

The testimony tends to show that the people of Moroni appropriated all the waters of the river flowing down to the S. E. Field and Canal Dam in 1860, and that the respondents have succeeded to such appropriation, for the use and benefit of the people; that the appellant's predecessors appropriated only the overflow and seepage waters which came into the river bed below the Rock Dam; that the first appropriation and use of these waters was insignificant and for a limited number of acres, but that in 1874 and 1877 the more extended use of the present time was first made; that the natural volume of the stream has not become larger, but that the enlarged use of the waters during the early or high water season, has resulted in storing the water for a time in the soil, and as a consequence, by seepage back into the river bed, resulted in an increased flow during the dry or low water season, and that

this is also true of the river below the Rock Dam; that this seepage water has not been restrained or diverted by respondents, and that all the waters flowing in the river above the Rock Dam, are used and appropriated by respondents; and by others, not parties, whose rights are both prior and subsequent in time to appellant's; that below the dam, others, not parties, are using the waters.

It also appears that Rock Dam was not controlled by the respondents, but by other people, not parties to the action. In the years 1893, 1894, and 1895, during which period plaintiff claims an interference with his water, several persons, other than the respondents, diverted water from above the Rock Dam, through ditches over which the respondents had no control. Some of these ditches diverted water appropriated by the owners before and some after appellant's appropriation of water by seepage and overflow below the Rock Dam. These appropriators of water between the S. E. Field and Canal Dams claimed under an increased supply through seepage and percolation, and the dams have been kept as tight as circumstances would permit during the ordinary low water season, thereby discharging water at each dam.

It does not appear that any one of the defendants, or other persons, not parties here, deprived the plaintiff of the water to which he is entitled. It is true that in ordinary cases, any one of many joint tort feasors may be made liable for the whole damage proved.

If the above rule is applicable in an equity case like this, anyone who has diverted some water might be held liable in damages to one who owned the whole of the water. But the appellant does not own all of the water. What he does own mostly arises from seepage, percolation, and surplus water below the Rock Dam. The wrongful taking of the water is charged against the de-

fendants, but other parties, not made defendants, also took water. It does not sufficiently appear how much was taken by each. The water claimed may be that which after being used above continued to seep or percolate back into the bed of the river, either above or below the Rock Dam. Such water may belong to those who appropriated water in the stream above the Rock Dam prior to the appropriation of the appellant.

In such a case as this when several parties are sued, in an equity proceeding, and it appears that other persons than the defendants, who have not been made parties to the action have, during the same period, diverted water from the same stream to such an extent that it can not be sufficiently shown that but for the acts of the parties not sued no injury would have resulted to the plaintiff, an injunction will not be granted in an action brought solely for that purpose. In such cases it must appear that the acts of those sued caused the injury, and that if such acts are continued damages will follow.

In *Hillman* v. *Nevington,* 57 Cal., 56, it was held:

" It is not at all improbable that no one of the defendants deprives the plaintiff of the amount to which he is entitled. If not, upon what ground could he maintain an action against any one of them? If he were entitled to all the water of the creek, then every person who diverted any of it would be liable to him in an action. But he is only entitled to a certain specific amount of it, and if it is only by the joint action of the defendants that he is deprived of that amount, it seems to us that the wrong is committed by them jointly, because no one of them alone is guilty of any wrong. Each of them diverts some of the water. And the aggregate reduces the volume below the amount to which the plaintiff is entitled, although the amount diverted by any one would not. It

is quite evident, therefore, that without unity or concert of action, no wrong could be committed; and we think that in such a case, all who act must be held to act jointly."

A court of equity could not be expected to enjoin an appropriator of water farthest up the stream without satisfactory proof that the water so claimed to be diverted would have, had it been allowed to pass down the stream, reached plaintiff's ditch. While one or all who take water might be sued, the parties who are sued should not be enjoined until it appears that their acts caused the injury complained of.

Notwithstanding the able argument and brief of counsel for the appellant, we are compelled to hold that although the testimony was conflicting, there was sufficient to sustain the findings of the court. *Klopenstine* v. *Hays*, 20 Utah, 45; 57 Pac., 712.

We have examined the other questions presented in the record, but find no reversible error in the rulings complained of.

The judgment of the district court is affirmed, with costs, but without prejudice on the part of appellant to commence and prosecute another action.

BARTCH, C. J., and BASKIN, J., concur.