DOSCHER et. al., Appellants, *v.* BLACKISTON et. al., Respondents.

Equity Jurisdiction—Decree of Divorce.—In a decree of divorce rendered in March, 1862, under the statute of this state, then in force, the party in fault was divested of her land, and the same was vested in her children: *Held*, that the court had the power, under the statute, to so transfer the land.

Idem.—If a court making a decree, which, by its terms, divests one person of land and vests it in another, has not the power to so vest the land and the decree is void in that behalf, the decree will also be inoperative to divest the title, and it will remain where it was.

Decree—Interpretation—Intention Governs.—The meaning of decrees as well as of statutes is to be ascertained from the manifest intention of those who made them, and a decree will not be so construed as to operate against the manifest intention of the court making it.

Appeal from Multnomah County.

In 1860 William Blackiston was the owner of a donation land claim. At that time, in consideration of love and affection, he conveyed the south half of the claim through one Odell, as trustee, to Laura A., his wife, during her natural life with a contingent remainder to her children by William, who should survive her. In February, 1862, there were four of such children living, Frances G., Charles A., Clara, and Tobias M. No other children were born of the marriage.

In March, 1862, a decree of divorce was granted in the state circuit court against Laura A., at the suit of William. By this decree the conveyance of William to Laura A. of 1860, was set aside, and the title to the south half of the donation claim, was decreed to vest in the said children, Frances G., Charles A., Clara, and Tobias M.

In 1863 Frances G. and Tobias M. died without issue.

In December, 1863, a judgment was recovered against William, and the plaintiff, John Doscher, upon which execution

issued, and a levy made upon all the estate of William in the donation claim. A sale was made on the execution to one Thoburn, who was acting, as is claimed, as the agent, in the purchase of the plaintiff, Ann Doscher.

Thoburn conveyed the property to J. N. Dolph on trust. The plaintiffs claim that Thoburn, in these proceedings, acted as the agent, and under the direction of Ann Doscher, while Dolph claims that the conveyance through Thoburn was from John Doscher, the husband of Ann. Upon the direction of John Doscher, Dolph brought a partition suit, and subsequently in pursuance of a decree therein, conveyed to the two surviving children, Charles A. and Clara, portions of the south half of the donation claim.

It is claimed, on the part of the appellants, that Laura A., having been divested of her life-estate before any estate became vested in the children, the estate reverted to Odell in trust for William, and that the Doschers succeeded to this estate under the execution sale against William.

The object of this suit is to cancel the deeds made by Dolph to the children, Charles A. and Clara, and to compel Dolph to execute a deed to the appellant, Ann Doscher, to the estates so conveyed to the two children.

The bill was dismissed, whereupon this appeal was taken.

The statute under which the decree of divorce was granted between William and Laura A. was as follows:

Sec. 7. "The court, in granting a divorce, shall make such disposition of and provision for the children as shall appear most expedient under all the circumstances, and most for the present comfort and future well-being of such children." * * *

Sec. 8. "In granting a divorce, the court shall make such disposition of the property of the parties as shall appear just and equitable, having regard to the respective merits of the parties, and to the condition in which they will be left by such divorce, and to the party through whom the property was acquired, and to the burdens imposed upon it, for the benefit of children." (Or. Stat. 1855, 440.)

*Sidney Dell,* for appellants.

*Northup & Gilbert,* for respondents.

By the Court, BOISE, J.:

From the pleadings and exhibits in this case it appears that William Blackiston being the owner of the land in controversy, conveyed it to James A. Odell, in trust to convey to his, Blackiston's, wife for life, remainder over to his children. Said Odell performed the trust by making the following deed: "For the consideration of one dollar to me paid by Laura Ann Blackiston, of the county of Multnomah, Oregon, and for divers other good and valuable considerations, I, James A. Odell, do hereby sell and convey unto the said Laura Ann Blackiston, for and during her natural life, and from and after her decease to the children of said Laura Ann and William Blackiston who shall survive the said Laura Ann; or if any of said children shall die, leaving issue, then to the survivors, and said issue share and share alike, the issue of each child taking the same share that the parent would have taken if living at the death of said Laura Ann, the following described property, to wit: (Here follows a description of the property.) After this, in March, 1862, at the suit of said William, a decree of divorce was granted between the said William and Laura Ann on account of the alleged misconduct of said Laura Ann, in which decree as to this land described in the deed named above, the court decided and decreed "that the said Laura Ann Blackiston be and she is hereby divested of all right, title and interest, property, claims and demands of, in and to the south half of the donation land claim of said William Blackistone and that said south half of said land claim be, and is hereby vested in Francis G. Blackiston, Chas. A. Blackiston, Clara Blackiston and T. M. Blackiston, in equal proportions in fee-simple; and that the said William Blackiston, is hereby authorized to have sole control, management and care of said south half of said claim, for the use and benefit of said Francis G., Chas. A., Clara and T. M. Blackis-

ton until they are lawfully entitled to the same in their own right." No question is made in this case but what the deeds to Odell, and from Odell to Laura Ann and children, are in due form to convey the land.

But it is claimed by the counsel for the appellants that the last-named deed conveyed only a contingent estate to the said children, and that the decree of divorce divested the life-estate out of said Laura Ann, but did not vest it in the said children, for the reason that the court had no authority by the statute to vest the same in said children, and that therefore, the decree being valid so far as it divested the life-estate out of said Laura Ann, destroyed it, and with it the contingent remainder to the said children. We think it was the intention of the court to transfer by its decree this property from said Laura Ann to the children. It was an attempt to convey the land by a decree, and if the court had no power under the statute to convey the land, then all this part of the decree was void, as well that which divested the life-estate out of Laura Ann, as that which vested it in the children. All this part of the decree seeks to accomplish one object, that is to vest this property in these children. It was an attempt to convey by decree of a court. In such conveyances there must be one who holds the title to be conveyed, and one who is to receive it; and if the decree fails to make the conveyance, the title will remain where it was, for a decree should never be made to operate against the manifest and declared intention of the court. To have this decree operate as contended for by counsel would be to make it effectuate an end contrary to the manifest intention of the court. The meaning and effect of decrees as well as statutes are to be ascertained from the manifest intention of those who make them, and if this property did not pass to the said children by these words of the decree, it stood unaffected by them.

As to whether or not the decree of divorce would by its own force divest property, not disposed of by its terms, out of the guilty party and in the party at whose suit the divorce was obtained, we do not now feel called on to decide. For we think the decree vested the life-estate of said

Laura Ann in said children, who held the estate in remainder, and the whole estate became vested in them when they received by this decree the particular estate held by their mother before the divorce.   This question of the power of the court in this behalf was settled by this court in the case of *Jacob Cline* v. *John Hurly*, tenant of Mary Cline, which was decided in 1864, where it was held that the circuit court had the authority to bestow on the children of divorced parties the real estate of the party in fault; and the decision of this court in that case concludes us in the decision of this case, for whatever might be our disposition to hold in this matter now, were it presented for the first time, we feel bound by the rule which has been so long established and often acted on by the circuit courts, whereby, in several instances, property which is now of great value has been transferred by decrees in divorce cases.   We would not be warranted in disturbing estates in land depending on such decrees under a statute which has long since been repealed, and the lands thus transferred by these decrees sold and purchased in good faith on their sanction.   For the people justly look on rules of property, settled and fixed by the decisions of the supreme judicial tribunal of the country, as giving the highest assurance that they will not be overturned or become uncertain.   Such being our opinion of the effect of this decree, it determines this case in favor of the respondents, and the decree of the circuit court will be affirmed with costs.