THE PEOPLE *ex rel.* Eli Frank

*v.*

RICHARD PRENDERGAST, County Judge.

*Filed at Ottawa May 15, 1886.*

1. APPEAL — FINAL JUDGMENT — *what so regarded, so as to give the right of appeal.* After a composition agreement was entered into between an insolvent debtor and his creditors, to discontinue an assignment proceeding and have the assignee turn over the moneys and effects in his hands to an agent of the creditors, a question arose between such agent and the assignee, whether a note taken by the assignee had been accepted by the agent, which the county court found against the assignee, and ordered him to pay over the amount of such note by ten o'clock the next day: *Held,* that such order of the county court was a final judgment, from which an appeal was given by statute, to the circuit court.

2. The manner of enforcing an order for the unconditional payment of money within a limited time, whether by execution, or attachment for disobedience, does not affect its character in respect to being final and subject to an appeal.

3. SAME — *effect of an appeal as a supersedeas.* Where a party is committed to jail for a contempt of court for refusing to comply with an order

of the county court, the perfecting of an appeal from the order disobeyed will of itself suspend all proceedings under the order of commitment, and there will be no necessity to appeal from it.

4. SAME—*mandamus to compel allowance of appeal.* Where the county court refuses to allow an appeal from its order, decree or judgment, in a case where one is given by law, this court will compel the county judge to allow the same, on the terms and conditions specified in the statute giving the right.

This was an original proceeding in this court, in behalf of Eli Frank, the relator, against Richard Prendergast, county judge of Cook county, to compel him to allow an appeal from an order made by him on the relator. The material facts appear in the opinion.

Mr. GEORGE W. SMITH, for the relator:

The section of the Probate Court act is taken from, and is substantially the same as, the section of the County Court act, which gives the right of appeal, and this court has construed that section of the Probate act in *Ennis* v. *Ennis*, 103 Ill. 95.

The language of the opinion in the case of *Haines* v. *People*, 97 Ill. 161, had reference to the Revised Statutes, chap. 3, sec. 114.

A writ of error did not lie from the circuit court, because the latter court could not sit to review the proceedings of the county court. The trial in the circuit court should be *de novo.* Nor did the common law writ of *certiorari* lie, and the statute gives no such writ. *Scates* v. *Railway Co.* 104 Ill. 93.

A certificate of evidence or bill of exceptions may be signed and filed at a term subsequent to the hearing or trial, irrespective of whether time has been prayed and obtained. The power exists to allow it. *Buckmaster* v. *Beames*, 4 Gilm. 443; *Railroad Co.* v. *McMillan*, 84 Ill. 208; *People* v. *Williams*, 91 id. 87.

This was a case of equitable cognizance. *Brandon* v. *Brown*, 106 Ill. 519.

It has been held that the court may, at a subsequent term, amend its records, so as to cause them to correspond with the true state of the proceedings. The power to incorporate in the record a certificate of evidence, is similar to that which allows an amendment to be made, or, rather, the exercise of the power in one case is no more a stretch of prerogative than it is in the other. The suing out of a writ of error, and making a *supersedeas*, is no obstacle to amendment. *Dunham* v. *South Park Comrs.* 87 Ill. 135.

The court may be justified in refusing to sign a certificate of evidence or bill of exceptions under some circumstances, but not for want of power. *People* v. *Jameson*, 40 Ill. 93; *People* v. *Blades*, 104 id. 591; *People* v. *Gary*, 105 id. 264; *Railway Co.* v. *People*, 106 id. 652.

No term has lapsed in the present instance. Rev. Stat. chap. 10, sec. 14; *Wallace* v. *Gatchell*, 106 Ill. 315.

*Mandamus* is the proper remedy to compel the allowance of an appeal. Wood on Mandamus, 20, and cases cited; *Ex parte Martin*, 5 Ark. 371; *Beebe, Admr.* v. *Lockert*, 6 id. 422; *Ex parte Cutting*, 94 U. S. 14; *Ex parte Jordan*, id. 248; *Ex parte Railroad Co.* 95 id. 221; High on Ex. Leg. Rem. (2d ed. 1884,) where the language of the first edition is revised.

Messrs. Moses, Newman & Reed, for the respondent:

At common law, all superior courts are the sole judges of contempts against their authority, and their decisions are not reviewable by appeal, unless an appeal is specially authorized by statute. Repalje on Contempts, p. 198; *New Orleans* v. *Steamship Co.* 20 Wall. 387.

A proceeding for a contempt is in the nature of a criminal proceeding. *Clark* v. *People*, Breese, 226; *Williamson's case*, 26 Pa. St. 24; *Ex parte Kearney*, 7 Wheat. 41.

The alternative prayer of the petition, that the respondent be commanded to sign a certificate of evidence after the term

had elapsed at which the exceptions were taken, without ob-
taining consent of counsel or an entry of record granting
further time, is destitute of merit.    *Railroad Co.* v. *People,*
106 Ill. 652; *Burst* v. *Wayne,* 13 id. 664.

The remedy by *mandamus* rests largely in the discretion of
the courts.    *People* v. *Johnson,* 100 Ill. 537; *People* v. *Davis,*
93 id. 133; *People* v. *Village of Crotty,* id. 180.

The party seeking the writ must show a clear right to it.
*People* v. *Trustees of Schools,* 86 Ill. 613.

The *laches* of a party always affords sufficient grounds for
refusing the writ.    High on Ex. Leg. Rem. secs. 204, 269;
*Midbury* v. *Collins,* 9 Johns. 245.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This is an original proceeding, commenced in this court
in the name of the People, on the relation of Eli Frank, for a
writ of *mandamus,* to compel· Richard Prendergast, as Judge
of the county court of Cook county, to grant appeals from
certain orders entered in that court against relator on the
5th and 6th days of December, 1884, by which relator, who
was the· assignee of Graff, Abramson & Co., was, on the 5th
day of December, in a certain proceeding then pending in the
county court, "adjudged and decreed" to pay to· the parties
appointed by the creditors of the insolvent estate to receive
the same, a certain sum of money by ten o'clock on the next
succeeding day, and on the 6th day of December he was
ordered to be imprisoned in the common jail of the county
for a non-compliance with the order and judgment of the
court pronounced against him on the previous day.· The
petition for the writ sets forth the several orders and pro-
ceedings, and the judgments of the court below, from which
appeals were prayed, all of which are admitted by the answer,
substantially, as therein stated.    The petition contains the
further prayer, that in case this court shall be of the opinion

that appeals will not lie from the orders complained of, to the circuit court of Cook county, then the respondent be commanded to sign, seal and allow a certificate of evidence in the matters referred to, if the same should be presented by the relator and found to conform to the facts.

If it shall be determined an appeal will lie from either order or decree of the county court, as set forth in the petition, to the circuit court, under the statute, a trial *de novo* in the latter court would take place, and in that event it will not be necessary to consider the alternative relief asked for in the petition.

Chapter 37, entitled "Courts," of Cothran's edition of 1883 of the statutes, contains the following sections in regard to appeals from final orders, judgments and decrees of county courts:

"212. Appeals may be taken from the final orders, judgments and decrees of the county courts to the circuit courts of their respective counties, in all matters except as provided in the following section, upon the appellant giving bond and security, in such amount and upon such conditions, as the court shall approve, except as otherwise provided by law. Upon such appeal the case shall be tried *de novo*.

"213. Appeals and writs of error may be taken and prosecuted from the final orders, judgments and decrees of the county court to the Supreme Court or Appellate Court, in proceedings for the confirmation of special assessments, in proceedings for the sale of lands for taxes and special assessments, and in all common law and attachment cases, and in cases of forcible detainer, and forcible entry and detainer. Such appeals, and writs of error shall, when not otherwise provided, be taken and prosecuted in the same manner as appeals from and writs of error to circuit courts."

One question that necessarily arises, is, whether either of the orders or judgments rendered against relator by the county court was a final order or judgment, in the sense those terms

are used in the statute, and from which an appeal will lie
to the circuit court.   It will therefore be necessary to a proper
understanding of the question made, to ascertain what was
in controversy between the parties, and what was decided
by the court.

It appears the relator was assignee of the insolvent estate
of Graff, Abramson & Co., and had entered upon the duties
of the trust imposed, under direction and supervision of
the county court.   While such proceedings were pending, it
seems a composition agreement was entered into between
the insolvent debtors and their creditors, by which it was
agreed, among other things, to discontinue the assignment
proceedings, and that Moses & Newman, as the attorneys for
the creditors, should receive from the relator all moneys and
property in his hands, as such assignee, belonging to the
estate of the debtors.   On that agreement being submitted
to the county court, an order was entered, perhaps on the
8th day of September, 1884, discontinuing the insolvent pro-
ceedings, but retaining jurisdiction over the assignee until
he should make due delivery of the assigned property in
his hands and control, to Moses & Newman, to whom such
property was to be transferred, as directed by the debtors
and assenting creditors.   Shortly after the assignment pro-
ceedings had been discontinued, the relator, as such assignee,
made a report, as he was directed by the court to do, of the
moneys and property in his hands and under his control,
and to which it does not appear any objections were taken
by any one.   On the 15th day of September, 1884, the re-
lator delivered to Moses & Newman a certified check for
$10.242.39, and one promissory note made by B. J. Ettel-
sohn to the order of relator, as assignee, for $2387.95, and
guaranteed by relator, and also a warehouse receipt for twenty-
two cases of goods, for all of which he took the receipt of
Moses & Newman, of that date.   Should it be ascertained the
note of Ettelsohn for $2387.95 was taken by Moses & New-

man as so much money, then the amount paid would be in full of all that was in the hands or under the control of the relator, as assignee of the insolvents' estate.  But a contention arose as to how the note was taken, and afterwards Moses & Newman, by petition, represented to the court they had not received the Ettelsohn note for $2387.95 in discharge for so much money due from the assignee, but that they had received it temporarily, with his guaranty upon it, and that relator would, in a short time, pay the deficiency represented by the amount of the note, in money.   To the petition of Moses & Newman, stating these and other facts with more fullness as to how the note was received by them, relator filed his answer, in which he represented the note in question was made to him, as such assignee, for a part of the purchase price of the stock of goods of the insolvent debtors, which was purchased by Ettelsohn at sixty per cent of the valuation theretofore fixed, by direction of the court.   Other facts are stated by relator in his answer, which he insists constituted a full and complete defence to the matters alleged against him in the petition, and relieved him from any obligation to take the note back from Moses & Newman, and pay them instead thereof the amount of money represented by the note. It will not be necessary to state more particularly the facts relied upon as a sufficient defence to the petition.   It is enough for the purposes of the present decision, that the matters in relation to the note were in contention between the parties.   The court, on the hearing of the case, as made by the petition and answer of relator, and upon the evidence introduced, found that the delivery by the assignee, of the promissory note to Moses & Newman, was not a discharge of his obligation, as such assignee, to pay over to Moses & Newman the funds of the estate in his hands, as assignee, as ordered by the court, and that the note was not accepted by Moses & Newman as payment by such assignee, and the court further finds that such note is now, and since the filing of

the petition of October 3, 1884, has been, in the control of the court, for the use of relator, as his property. It is therefore ordered, considered, and adjudged and decreed by the court, that said Eli Frank, assignee as aforesaid, pay to said Moses & Newman the said sum of $2387.95, being the balance of the cash assets of said estate now in his hands, at or before the hour of ten o'clock in the forenoon of Saturday, the 6th day of December, 1884.

This is the order and decree of the court made on the 5th day of December, from which an appeal was prayed by relator, and which was refused by the court. It is difficult to understand how this can be regarded otherwise than as a final order and decree of the court, from which an appeal is expressly given by the statute, to the circuit court. It was a definitive adjudication of matters in dispute between the petitioners and respondent, in a cause pending in court concerning property interests. In that proceeding, relator was "adjudged and decreed by the court" to pay to petitioners in that cause the sum of $2387.95, by a certain date fixed by the order of the court. No element of a final decree is wanting in the case. The decree is absolute, and requires the unconditional payment by relator, within a short time fixed, to petitioners, the amount of money found due from him. That is as much a final judgment as if the court had awarded execution for its collection. The manner of enforcing payment, whether by execution or by attachment for disobedience to the judgment and decree of the court, does not affect the character of the decree. Whether enforced in one way or the other, it is none the less a final decree. Not the slightest doubt is entertained that an appeal would lie from the order of the county court, made on the 5th day of December, wherein the relator was "adjudged and decreed by the court" to pay petitioners in that cause the sum of $2387.95, and the court should have allowed relator's motion for an appeal, on the terms and conditions specified in the statute.

Whether an appeal would lie, under the statute, from the order of the court made on the 6th day of December, committing the relator as for contempt of court for the non-compliance with its decree made on the 5th day of December, need not now be considered. Had the appeal been allowed, as it should have been, from the decree rendered on the 5th of December, and had the same been perfected by giving such bond as the court might have regarded as sufficient, which, no doubt, would have been done at once, that would have suspended all further proceedings in the cause, and no order could therefore have been made committing relator for a non-compliance with the decree of the court, until after the determination of the appeal. So now, when the appeal shall be allowed and perfected, under the statute, from the decree of the court made on the 5th of December, 1884, that of itself will suspend all further proceedings under the order committing relator, made on the 6th of December, 1884, and it is a matter of no consequence whether relator can have an appeal from the latter order or not.

A writ of *mandamus* will be ordered, commanding respondent to grant relator an appeal from the order and decree rendered against him in the county court on the 5th day of December, 1884, on the terms and conditions specified in the statute in such cases made and provided.

*Writ ordered.*

CRAIG and SHOPE, JJ., dissenting.