Ida Yedor, Appellee, v. Chicago City Bank and Trust Company, Individually and as Trustee, etc., et al., Appellants.
Eugene Rodin et al., Appellees, v. George O. Carlson et al., Appellants.
Ida Yedor, Appellee, v. Chicago City Bank and Trust Company, Individually, Appellant.

Gen. Nos. 42,396, 42,397, 42,543.

44

Opinion filed May 1, 1944. Rehearing denied May 15, 1944.

RATHJE, HINCKLEY, BARNARD & KULP, of Chicago, for appellants; FRANKLIN J. STRANSKY and FRANCIS E. HINCKLEY, both of Chicago, of counsel.

BERNARD YEDOR and CHARLES LIEBMAN, both of Chicago, for certain appellee.

ALSTER, BERGER & WALD, of Chicago, for certain other appellees.

REMPERT & WAHLER, of Chicago, for certain other appellee.

MR. JUSTICE NIEMEYER delivered the opinion of the court.

Five appeals have been taken in this case. Plaintiff as owner of 5/1360ths interest in real estate in Chicago improved by an apartment and store building, title to which was held by the Chicago City Bank and Trust Company (hereafter called the bank), as trustee, instituted a partition proceeding; she later filed her supplemental complaint for partition, for removal of the trustee and for an accounting. The court overruled defendant's motion to strike the supplemental complaint and allowed plaintiff's motion for judgment on the pleadings. By decree of July 23, 1940 the court ordered partition and fixed the interests in the property in equity in fee simple as follows: Plaintiff— 5/1360ths; defendant Goldstein—15/1360ths; and defendants Carlson, Kingsbery and Ytterberg the remaining 1340/1360ths. This decree was affirmed by the Supreme Court (*Yedor v. Chicago City Bank & Trust Co.*, 376 Ill. 121.) There was no disposition of or reference to that part of the supplemental complaint calling for the removal of the trustee and for an accounting. After remandment to the trial court an order was entered July 10, 1941 awarding plaintiff $8,155 for attorneys' fees (more than 20 times the value of her interest—under $400, based on the commissioners' appraisal of the property at $91,000), and $900 to the commissioners—one of whom was a deputy clerk and another the bailiff assigned to the court of the trial judge. July 16, 1941 an order of sale was entered requiring any purchaser at the sale to deposit with the master cash, or a certified or cashier's check in the amount of 10 per cent of his bid, notwithstanding Carlson, Kingsbery and Ytterberg were found by the decree, as affirmed by the Supreme Court, to own

over 98 per cent of the property being sold. On appeal from these orders a conference of the parties was had in the early part of December 1941, at the suggestion of the second division of this court, to which the case had been assigned, and as a result a stipulation was entered into by plaintiff and Carlson, Kingsbery and Ytterberg whereby the appeal was dismissed and it was agreed that no rights would be claimed under the order allowing the fees but that these matters would be submitted for adjudication without prejudice, and that the order of sale be amended so that if parties in interest such as Carlson, Kingsbery and Ytterberg were successful bidders they should not be required to deposit with their bid an amount greater than the aggregate sum which all other parties in interest would be entitled to receive from the sales price, even though the deposit should be less than 10 per cent of the amount bid. On January 2, 1942 the order of sale was amended accordingly, but no sale was had or attempted to be had under the amended order. On the same day an order was entered reciting that the default theretofore entered against Eugene Rodin (who claimed he had been made a party as unknown owner), be vacated as to all matters not theretofore adjudicated in the decree of partition, to the end that Rodin might ''appear and defend with regard to the rights and liabilities existing between him, on the one hand, and Carlson, Kingsbery and Ytterberg and the Chicago City Bank and Trust Company on the other,'' and that Rodin be given leave to file his answer and cross complaint. From this time plaintiff yielded the initiative and Rodin became the director of the proceeding; he filed his answer and a counterclaim and later succeeded in having 38 persons join with him as counterclaimants in an amended and supplemental counterclaim; while the motions for leave to these additional parties to appear were pending, a petition for change of venue from the trial judge and one other judge was filed

by the bank, Carlson, Kingsbery, Ytterberg and four other defendants to the supplemental complaint; Rodin and the other 38 persons, who had not yet become parties to the cause, filed a motion to strike the petition; an order was entered April 24, 1942 sustaining plaintiff's motion (not shown by the record) to strike the petition and denying the change of venue; July 2, 1942, on motion of plaintiff, Rodin, and the 38 other owners who had been permitted to intervene and who, with Rodin, had filed an amended and supplemental counterclaim, a third order of sale was entered, together with an order declaring rights with relation to bidding at the sale in the counterclaimants. These orders violated the stipulation upon which the order of sale of January 2, 1942 was entered and the conditions upon which intervention was permitted. Counterclaimants seek to justify their position by claiming they were not parties to the stipulation. From these orders the bank, Carlson, Kingsbery and Ytterberg (counter-defendants) appealed. July 13, 1942, on motion of counterclaimants, concurred in by the plaintiff, an order was entered removing the bank as trustee under Trusts 1090 and 2738 (explained more fully hereafter), and appointing a successor trustee in Trust 1090. From this order the bank appealed. September 26, 1942 on motion of plaintiff, the bank was ordered to pay to the master in chancery $586.52 to reimburse the master for obligations alleged by the plaintiff to have been incurred by the master in advertising the property for sale under the order of July 16, 1941. The bank appealed from this order. These appeals have been consolidated and motions to dismiss each appeal or, in the alternative, to transfer the two appeals first taken to the Supreme Court, have been reversed for final hearing.

In this court plaintiff joins with the counterclaimants in the motions relating to the two appeals from the orders decreeing the sale, fixing the rights of coun-

terclaimants with relation to bidding on the sale and removing the bank as trustee; she yields to counterclaimants the defense of these orders on the merits and adopts the points, authorities and arguments of counterclaimants; she argues only the merits on the appeal with respect to the order of payment of money to the master, in which appeal she also made a motion to dismiss.

As appears from the opinion of the Supreme Court, the bank first acquired title to the property involved August 15, 1926, as trustee under a trust deed given to secure certain serial bonds; default having been made, the property was deeded to the bank August 15, 1932, as trustee under Trust 1090 for the benefit of the bondholders, all of whom deposited their unpaid bonds, which aggregated $136,000, and received certificates of interest—one share or unit for each $100 par value of bonds deposited; the trust agreement and the certificates of interest contained provisions that the holders of beneficial interests had no right, title or interest, legal or equitable in or to any of the property covered by the trust agreement, but only an interest in the net income, proceeds and avails thereof, and that such interest shall be conclusively deemed and taken to be personal property. By the terms of the agreement the property was to be sold not later than August 15, 1939, and neither the managing committee provided for in the agreement nor any other person was given any power to continue or postpone the sale beyond that date. No sale was made within the time limited. On August 14, 1939 (the day before Trust 1090 expired), the bank, managing committee, assenting beneficiaries of the trust and a certificate holders' committee, consisting of Carlson, Kingsbery and Ytterberg, entered into a new trust agreement—Trust 2738; this trust was to last 10 years, and under it all former certificate holders were to deposit their certificates with the bank and sell them to the certificate

holders' committee, which was to purchase the real estate from the bank and reconvey it in trust for the assenting certificate holders; all certificate holders assented except plaintiff and defendant Goldstein—holding respectively 5 and 15 units; on December 6, 1939, the day plaintiff instituted this partition proceeding, the bank sold the premises for $13,600 (one-tenth of the par value of outstanding certificates) to Carlson, Kingsbery and Ytterberg, who acted under Trust 2738 and reconveyed to the bank as trustee under that trust; in the partition proceeding the bank sought to have Trust 2738 and the sale and conveyance made in order to effectuate the trust approved and to compel the plaintiff to elect whether she would accept five shares under Trust 2738 or $50 in cash. The Supreme Court said (376 Ill. at p. 131): "They (the bank and the certificate holders' committee) had no power to compel appellee to either enter into a new trust agreement, to accept a new certificate for five shares or to accept ten cents on the dollar. The bank's authority had ended and whether it can be said that there can be a breach of a terminated trust, the agreement dated August 14, 1939, and the subsequent sale, conveyance and reconveyance, were void." Counterclaimants, who were not then before the court and who had assented to the formation of Trust 2738 and surrendered their certificates of interest under Trust 1090 and received certificates under Trust 2738, now take the position that the Supreme Court has finally and conclusively adjudicated the latter trust to be void as to them and all other holders of beneficial interests. This is an erroneous construction of the opinion. The Supreme Court had before it only the rights of nonassenting certificate holders and was deciding only the matters in issue. In *Aloe v. Lowe*, 298 Ill. 404, 408, 409, the court said: "It is well settled that a decree is to be construed with reference to the issues it was intended to decide, and if its language is broader than is required it will be

limited by construction so that its effect shall be such, only, as is needed for the purposes of the case that has been made and the issues that have been decided. (*City of Vicksburg v. Henson,* 231 U. S. 259; *Graham v. Chamberlain,* 3 Wall. 704; *Doscher v. Blackiston,* 7 Ore. 403; *Clay v. Hildebrand,* 34 Kan. 701.)'' To the same effect is *People. v. LaMothe,* 331 Ill. 351, 357. The same rule of construction was applied to opinions of the Supreme Court in *People v. Wethel,* 202 Ill. App. 77, and *People v. Grant,* 208 Ill. App. 235 (affirmed in 283 Ill. 391.) No legal impediment is urged by counterclaimants and none is suggested by the record before us to prevent assenting certificate holders, the bank, Carlson, Kingsbery and Ytterberg entering into Trust 2738 and continuing it as to the interests owned by them.

The motions to dismiss the appeals taken from the orders of July 2 and July 13, or in the alternative to transfer each of the appeals to the Supreme Court, were filed by counterclaimants and concurred in by plaintiff and Elmer Haserodt (one of more than 100 persons made defendants to the amended and supplemental counterclaim as holders of beneficial interests under Trust 2738). As to the first appeal it is suggested that the decree of sale—the principal order appealed from, is not a final or appealable order. The authorities are in conflict as to whether an appeal lies from such an order. 40 Am. Jur., Partition, sec. 82. In *Bergman v. Rhodes,* 334 Ill. 137, an appeal prosecuted from an order affirming the report of the commissioners and decreeing a sale was considered by the Appellate and Supreme Courts, no objection having been made. By the decree and a prior order on which it is based the court determined that the property was not susceptible of division and directed that it be sold. If affirmed the trial court has only to proceed with its execution. It therefore has the essential elements of finality. *Groves v. Farmers State Bank of Woodlawn,*

368 Ill. 35; *Kawszewicz v. Kawszewicz,* 385 Ill. 461. In the present case, concurrently with the entry of the decree of sale an order designated as a supplementary order was entered which definitely fixed the rights of counterclaimants in bidding at the sale. The right to appeal from this order is not questioned. Such appeal would be futile if a sale was had pending the appeal. No authorities are cited in support of counterclaimants' contention that the order removing the trustee is not appealable, and no substantial argument is made in support of the position taken. We see no reason to hold that it is an order from which the bank, ousted as trustee, cannot appeal. The objection that both appeals should be dismissed for uncertainty as to the party appealing because the notices were signed by the bank as trustee, without designating the trust under which the trustee is acting, is hypercritical and will be ignored.

The only other ground for dismissing these appeals which needs consideration is that no notice of appeal was served on Elmer V. Haserodt. He and Elsie G. Haserodt were made parties defendant to the amended and supplemental counterclaim as joint trust beneficiaries under the trusts involved; on July 3, the day on which notice of appeal from the orders of July 2 was served, Haserodt entered his appearance and filed an answer neither admitting nor denying any of the allegations of the amended or supplemental counterclaim, except to admit that he is a beneficiary of the trust (without stating the extent of his interest), but demanding strict proof thereof. It does not appear that defendants and counter-defendants appealing had actual notice of his appearance and answer. He is the only one of more than 100 persons, alleged to be beneficial owners under the trust and made defendants to the counterclaim, who has appeared; he prayed for no relief and has taken no action in the case except to join in counter-

claimants' motion to dismiss the appeals. While, as counter-defendants insist, suspicion may rightfully be aroused as to why Haserodt entered his appearance at the time and in the manner shown, his interest does not appear to be sufficiently adverse to that of counter-defendants appealing to cause dismissal of the appeal. The motions to dismiss these appeals are denied.

The alternative motions to transfer the appeals to the Supreme Court are based on the claim that a freehold is involved in each appeal. Counter-defendants base their appeal solely upon questions of practice, namely, that the trial court erred in permitting counterclaimants to intervene and in denying the petition for change of venue. The right to appeal to the Appellate Court in such cases has been decided a number of times. In *Miller v. Kensil,* 223 Ill. 201, a partition suit, the court said: "Appellant only urges a question of practice,—that the court improperly struck his plea in abatement from the files. When such questions only are raised the appeal should be taken to the Appellate Court. (*Fread v. Fread,* 165 Ill. 228.) The fact that a freehold has been involved in a suit does not determine the question of jurisdiction upon appeal. The freehold must not only be involved in the original decree but also in the questions to be determined on the appeal, in order that this court may have jurisdiction. *Hutchinson v. Spoehr,* 221 Ill. 312; *Prouty v. Moss,* 188 id. 84; *In re Estate of Ross,* 220 id. 142; *Douglas Park Building Ass'n v. Roberts,* 218 id. 454; *Franklin v. Loan and Investment Co.,* 152 id. 345." The alternative motions to transfer the appeals are denied.

In respect to the right of counterclaimants to intervene, the record shows that in Rodin's petition for leave to appear and defend, filed December 30, 1941, it is stated on the oath of his attorney that up to November 3, 1941 Rodin "had no knowledge of the pendency of the proceedings herein, having been made party defendant hereto only by the name and descrip-

tion of 'unknown owners,' " and "that he accepts and adopts all of the proceedings heretofore had herein, including the decree of partition heretofore had herein, except that he desires to have his rights determined as between him and the defendants Carlson, Kingsbery and Ytterberg, and the Chicago City Bank and Trust Company, as trustee under Trust No. 1090, and as trustee under Trust No. 2738." And by his counterclaim for dissolution of the trust, for accounting, for removal of trustees, for appointment of successor trustees and for appointment of receiver, filed January 6, 1942, it is stated on the oath of the same attorney that Mary Steffen, a widow, departed this life April 7, 1935, leaving, among other properties and assets, a certificate for five shares of beneficial interest in and to Trust 1090; that her administrator surrendered that certificate in exchange for a new certificate for five units of beneficial interest in Trust 2738; that pursuant to an order of the probate court of Cook county entered November 17, 1941, the administrator sold, assigned and conveyed his interest in and to the certificate under Trust 2738 to Rodin, and that on December 3 and December 15, 1941, certain heirs of Mary Steffen conveyed and quitclaimed to Rodin their right, title and interest in and to the real estate which is the subject of this proceeding, and that at the time of the filing of the counterclaim the remaining heirs of Mary Steffen, deceased, had committed themselves to convey and quitclaim to Rodin within a short date their right, title and interest in and to real estate involved herein. The interest claimed to have been acquired and expected to be acquired by Rodin cannot exceed in value the interest of the plaintiff, which is not in excess of $400. With his maximum recovery limited to this comparatively small amount, Rodin claims to have acquired an insignificant interest —less than one half of one per cent—in property involved in litigation, employs attorneys, files an answer

and counterclaim, procures by order of court a list of beneficiaries under Trusts 1090 and 2738, corresponds with all the persons named as beneficiaries, joins with those whom he succeeds in getting to unite with him in an amended and supplemental counterclaim, based primarily upon alleged frauds perpetrated prior to the acquisition of his interest, and then assumes the laboring oar on the appeals to this court. Unless we reject all our experience we can reach no conclusion other than that Rodin acquired his insignificant interest solely for the purpose of injecting himself into this litigation and directing it for some advantage to himself or others beyond the realization of the actual value of the interest he now claims to own. Courts should not encourage such intermeddling in litigation. The situation is similar to that in *Langson v. Goldberg,* 373 Ill. 297.

It appears affirmatively from Rodin's petition and counterclaim and the answer of counter-defendants thereto that Rodin and each of the other 38 counterclaimants entered this case as persons who had theretofore been made defendants to the original complaint, as amended, under the name, style and description of unknown owners. Their right to appear as unknown owners is limited to within one year from the entry of the decree. (Ill. Rev. Stat. 1943, ch. 110, par. 174, subpar. 8 [Jones Ill. Stats. Ann. 104.050].) By analogy, by former section 19 of the Chancery Act (*Busby v. Maus,* 294 Ill. 401, 406; *Barney v. Froehlich,* 286 Ill. App. 41.) The decree involved is a decree of partition entered July 23, 1940, which definitely fixed the interests of the various persons in the property and ordered partition. The first petition to intervene—that of Rodin, was not filed until December 30, 1941 and, therefore, after the decree had become fixed as against Rodin, his grantors and the remaining counterclaimants. After stating in their brief, "The counterclaimants do not rely and never have relied on subdi-

vision 8 of section 50 of the Civil Practice Act as a basis for their right to appear and be heard in this proceeding," counterclaimants assert the right to intervene under sections 14, 15, 31 and 39 of the Partition Act (Ill. Rev. Stat. 1943, ch. 106 [Jones Ill. Stats. Ann. 109.462, 109.463, 109.479, 109.488]), and under sections 4, 25 and 26 of the Practice Act (ch. 110, pars. 128, 149 and 150 [Jones Ill. Stats. Ann. 104.004, 104.025, 104.026]), as well as under the general chancery practice. Section 14 of the Partition Act provides: "During the pendency of any such suit, any person claiming to be interested in the premises to be assigned or aparted, may appear and answer the petition and assert his or her rights by way of interpleader." Rodin in his petition to intervene "accepts and adopts all the proceedings heretofore had, including the decree of partition," and the order permitting him to intervene vacated the default against him "as to all matters not heretofore adjudicated in said decree of partition." Rodin therefore is in no position to open that part of the decree, affirmed by the Supreme Court, fixing 1340/1360ths interest in the property in equity in fee simple in Carlson, Kingsbery and Ytterberg. The remaining counterclaimants who sought leave to appear and join in the amended supplemental counterclaim of Rodin could not enlarge the rights of Rodin but were bound to accept the case in the condition in which they found it. *In re Estate of Blyman,* 382 Ill. 520, and cases cited. Further, Rodin came in after the decree of sale entered July 16, 1941, and the other counterclaimants came in after the amended decree of sale, entered January 2, 1942. This was too late. In *Haase v. Haase,* 261 Ill. 30, a partition suit, where a party claiming an interest in the property sought to intervene after decree of sale, the court said: "It was only after the entry of the decree of sale that he asked to intervene, and it was then too late. There was no longer any cause in which to inter-

vene. It was ended. An intervention implies a suit pending between parties in which another applies to be heard. After a cause has been heard and determined between the parties there can be no intervention by a third person. Whatever rights another may then have in the subject matter of the controversy must be enforced by an original proceeding. That course is still open to the appellant." To the same effect is *In re Estate of Reemts*, 383 Ill. 447, and cases cited. The provisions of the Practice Act relied upon by counterclaimants do not aid them. Section 4 requires that the act be liberally construed. Section 25 permits the court to direct the bringing in of persons without whose presence a complete determination of the controversy cannot be had, and section 26 permits the adding of new parties as the needs of justice may require. These sections added nothing to the existing law on the subject of intervention. *Bernero v. Bernero*, 363 Ill. 328; *Hairgrove v. City of Jacksonville*, 366 Ill. 163. Counterclaimants have no rights involved in the partition suit, unless they open up the decree of partition which became fixed as to them long before they sought to intervene. This should not be permitted. Whatever rights counterclaimants may have for an accounting and removal of the trustee are independent of the partition proceeding and will survive it. There are no allegations of insolvency of the counter-defendants or of other facts which would require the proceeds of the partition sale to be retained under the control of the court for the protection of the interests of persons claiming under either trust. The cases cited above show that counterclaimants had no right to intervene under general chancery practice.

Pending application of the 38 counterclaimants, other than Rodin, to intervene, a petition for change of venue was filed, signed by the bank, individually and as trustee under Trusts Nos. 1090 and 2738, Arthur G. Rathje, W. W. Beymer, Charles Palmer, Frank J.

Burke, George O. Carlson, Howard G. Kingsbery and Victory E. Ytterberg; it was sworn to by Arthur G. Rathje, who stated under oath "he is one of the above named petitioners and has signed the foregoing petition by and with the consent of the said other petitioners and said other petitioners have joined therein by signing the same." This petition was stricken and the change of venue denied. The petition was signed by 10 of the 11 parties defendant to the original and supplemental complaint for partition; it was signed by 8 of the 10 parties made defendants to the amended and supplemental counterclaim subsequently filed. The pertinent parts of the Change of Venue Act are sections 3 and 9 (Ill. Rev. Stat. 1943, ch. 146 [Jones Ill. Stats. Ann. 107.318, 107.324]). Section 3 requires every application for change of venue to be made by petition, which shall "be verified by the affidavit of the applicant." Section 9 provides, "When there are two or more plaintiffs or defendants, a change of venue shall not be granted unless the application is made by or with the consent of at least three-fourths of the parties, plaintiff or defendant, as the case may be. . . ." In considering this statute in the case of *People v. Scott,* 326 Ill. 327, 341, a civil proceeding to determine the sanity of defendant, the court said: "The spirit of our laws demands that every case, whether a statutory proceeding or otherwise, shall be fairly and impartially tried, and no judge should think of presiding in a case in which his good faith in so doing is open to such serious question as that presented by this record. These provisions of the statute should receive a broad and liberal, rather than a technical and strict, construction, and should be construed so as not to defeat the right attempted to be attained therein." All that the statute requires where there are two or more defendants, as in this case, is that three fourths of the defendants consent to the change of venue. Here the requisite number signed the petition, thereby

signifying their consent as strongly as though all the defendants, other than Rathje who swore to the petition, had signed and filed a separate writing in which they expressly consented. The truth of the petition was sworn to by Rathje, who stated under oath that he signed it by and with the consent of the other petitioners. This was sufficient. *People v. May,* 276 Ill. 332 (affirming 198 Ill. App. 625), cited by counterclaimants, merely holds that for want of a bill of exceptions the record did not present any question concerning the motion for change of venue. It follows that the question was not before the Appellate Court, which decided the case on the same record. However, it is readily distinguishable. In speaking of the petition there involved the Appellate Court said (630) : "It purports to have been made by Thomas May, Jr. on behalf of himself and his codefendants Kurrus and Meints and is sworn to by May alone. It does not state that it is made at the request of Kurrus and Meints or with their knowledge or consent." It cannot be said that the petition was filed too late. The partition proceeding had long been disposed of except for the sale, which plaintiff showed no disposition to hasten, except in conjunction with counterclaimants, who sought to set aside the decree of partition; 38 counterclaimants were seeking to intervene and inject into the case certain charges of fraud perpetrated upon each of them, and for an accounting, etc. This was a new matter, collateral to the main issue, and the petition for change of venue filed before hearings on the petition to intervene were commenced was in apt time. *Des Chatelets v. Des Chatelets,* 292 Ill. App. 357; *Jackson v. Jackson,* 294 Ill. App. 508.

This leaves for consideration the appeal from the order directing the bank to pay to the master $586.52, representing obligations incurred by the master in advertising the sale of the property under the order of June 16, 1941. The master is not seeking this relief.

It was sought by plaintiff, who has no interest in the matter. Her petition does not state that the master has paid the bills. Plaintiff's sole argument is that the order is only for costs, and not appealable. The amount had not been taxed as costs and, if the averments of the bank's answer are sustained on a hearing there may be a question whether the sum should be taxed as costs. The order was a direction to pay a specific sum, and therefore appealable. *People v. Prendergast,* 117 Ill. 588; *People v. Illinois State Bank of Crete,* 312 Ill. 613. The motion to dismiss this appeal is denied.

Finally, as all the orders appealed from were entered after the court had wrongfully refused to grant the motion for change of venue, they must be regarded as nullities and should be rescinded. *Wendt v. City of Elgin,* 264 Ill. App. 433. Accordingly, each of the orders appealed from is reversed. The cause is remanded with directions to grant the change of venue, to rescind all orders entered subsequent to the filing of the petition for change of venue, and to proceed in accordance with this opinion.

*Reversed and remanded with directions.*

O'CONNOR, P. J., and MATCHETT, J., concur.