(February 29, 1892.)

## KIRK ET AL. v. BARTHOLOMEW ET AL.

[29 Pac. 40.]

MOTION TO DISMISS APPEAL—WATER RIGHTS—APPROPRIATION—PRIORITY OF RIGHT.

WATER RIGHTS—APPROPRIATORS OF.—1. The prior appropriator of water for irrigation purposes is entitled to the water so appropriated, necessary to the proper irrigation of his land, as against subsequent locators.

SAME—FIRST IN TIME FIRST IN RIGHT.—2. The court must determine the date and amount of each appropriation, and from these facts determine the priority of right as between the parties, as declared by section 3159 of the Revised Statutes of Idaho 1887, to wit, "As between appropriators the one first in time is the first in right.".

NUMBER OF ACRES CLAIMED OR OWNED TO BE CONSIDERED.—3. In determining the amount of water appropriated for useful or beneficial purposes, the number of acres of land claimed or owned by each party, and the amount of water necessary to the proper irrigation of the same, should be taken into consideration.

(Syllabus by the court.)

APPEAL from District Court, Cassia County.

T. M. Stewart, Charles Cobb and C. S. Varian, for Appellants.

The first appropriator of water from a natural stream upon the public lands for a beneficial purpose has a prior right thereto to the extent of such appropriation. (*Basey v. Gallagher,* 20 Wall. 670; *Butte etc. Co. v. Vaughn,* 11 Cal. 143, 70 Am. Dec. 769; *Schilling v. Rominger,* 4 Colo. 100; *Coffin v. Ditch Co.,* 6 Colo. 443; *Lobdell v. Simpson,* 2 Nev. 274, 90 Am. Dec. 537; *Barnes v. Sabron,* 10 Nev. 217; *Strickler v. City of Colorado Springs,* 16 Colo. 61, 25 Am. St. Rep. 245, 26 Pac. 313; *Lehi Irr. Co. v. Moyle,* 4 Utah, 327, 9 Pac. 867.)

Arthur Brown, S. B. Kingsbury, Hawley & Reeves and Smith & Smith, for Respondents.

If any settler used the waters of a river, and settled upon the public domain, his appropriation would not date from the

time when a squatter before him had used water upon the same land, but from his own appropriation. (*Smith v. O'Hara*, 43 Cal. 371; *Chiatovich v. Davis*, 17 Nev. 133, 28 Pac. 239; Pomeroy on Riparian Rights, sec. 58.) A subsequent appropriator has the right to take the entire stream out of its bed, and use it as he pleases, provided that in doing that he does not diminish the amount that flowed down to a prior appropriator below. (*Barnes v. Sabron*, 10 Nev. 217.) The use of a prior appropriator must be a reasonable one. (*Basey v. Gallagher*, 20 Wall. 670; *Barnes v. Sabron*, 10 Nev. 217.)

SULLIVAN, C. J.—This is an action brought by Lee Kirk, R. C. McCormack, the Raft River Land & Cattle Company, Stephen Keogh and J. W. Keogh against A. Bartholomew and numerous other defendants, to determine the priority of right to the use of the waters of Raft river, situated in Cassia county, Idaho. The complaint sets forth the rights under which each of the plaintiffs claim, and alleges that each of the defendants claim an appropriation of some of the waters of said Raft river, and that the appropriations under which defendants claim are subsequent in time to the appropriations made by the plaintiffs. The complaint further alleges that the defendants have deprived the plaintiffs of the use of the water of said river without their consent, to their great damage. The plaintiffs demand judgment determining the priority of plaintiffs' rights to the use of the water so appropriated by them, and demand that defendants be perpetually restrained from interfering with plaintiffs' rights to the use of the waters of said river to the extent of their several appropriations. The defendants answered, and by cross-complaint set forth the rights claimed by them to the use of a part of the water of said river, by reason of their appropriations. The case was tried by the court without a jury, and judgment entered. A motion for a new trial was overruled, and thereafter the plaintiffs, the Raft River Cattle Company, Stephen Keogh and J. W. Keogh appealed from the order overruling said motion for a new trial, and from the judgment.

The appellants, in their specifications of error, assign three errors, and by reason thereof demand a modification of said judgment. The first error assigned is the insufficiency of the

evidence to justify the decision. The evidence is wholly insufficient to justify the decision; and no evidence could be given, under the pleadings in this cause, that would justify the decision, under our laws governing the appropriation of water.

The second and third errors assigned are as follows, and will be considered together: "2. Errors of law in denying appellants' superiority of right, in view of found priority in time of appropriation. 3. Errors of law in scaling down amount of water to which appellants were entitled after June 15th of each year."

The evidence clearly shows that the appropriations made by the various parties (plaintiffs and defendants) extended over a period of about seventeen years, commencing in 1870 and ending in 1887. The court failed to find the amount of water actually appropriated, for a useful or beneficial purpose, by each of the parties or their grantors (in case a party claimed by purchase), and also failed to determine the priority of right of each appropriation over each subsequent appropriation, but simply allotted to each party a certain number of inches of water every season up to June 15th, and a certain number of inches to each from June 15th to July 15th of each year, and a certain number of inches to each party every year after July 15th, by a decreasing scale, regardless of the amount of water actually appropriated by each party, and regardless of priority of appropriation. The appellants contend that priority of appropriation gives priority of right, and cite the following authorities in suport thereof: *Basey v. Gallagher,* 20 Wall. 670; *Butte etc. Co. v. Vaughn,* 11 Cal. 143, 70 Am. Dec. 769; *Schilling v. Rominger,* 4 Colo. 100; *Coffin v. Ditch Co.,* 6 Colo. 443; *Lobdell v. Simpson,* 2 Nev. 274, 90 Am. Dec. 537; *Barnes v. Sabron,* 10 Nev. 217; *Strickler v. Colorado Springs,* 16 Colo. 61, 25 Am. St. Rep. 245, 26 Pac. 313; *Lehi Irr. Co. v. Moyle,* 4 Utah, 327, 9 Pac. 867. The authorities cited sustain the proposition contended for; but we need not go beyond our own statutes, and the decisions thereunder, for authority upon that proposition. The first act passed by the legislature of the territory of Idaho concerning the appropriation of water was an act entitled "An act to regulate the right to the use of water for mining, agriculture, manufacturing

and other purposes," approved February 10, 1881. (See Sess. Laws 1880-81, p. 267.) The first section of said act is as follows: "The right to the use of water flowing into a river, creek, canyon, ravine or other stream may be acquired by appropriation; and, as between appropriations, priority in time shall, subject to the provisions of this act, secure the priority of right." Section 8 of said act secures to persons who had made appropriations of water prior to the date of said act all of the water so appropriated, and is as follows:

"Sec. 8. All ditches, canals, and other works heretofore made, constructed or provided, and by means of which the waters of any stream have been diverted and applied to any beneficial use, shall be taken to have secured the right to the waters claimed, to the extent of the quantity which said works are capable of conducting, and not exceeding the quantity claimed, without regard to or compliance with the requirements of this act."

Thus the rule that, as between appropriations of water, priority in time secures priority of right, became a statute law of the territory of Idaho on the tenth day of February, 1881, and has remained a statute law ever since. The Revised Statutes of Idaho of 1887, section 3159, declares as follows: "As between appropriators the one first in time is the first in right." (See *Hillman v. Hardwick*, ante, p. 255, 28 Pac. 438, and authorities therein cited—a decision rendered by this court at its last term.) Regardless of the statutes and the decisions of this court thereunder, and the decisions of the supreme court of the United States, and of the highest courts of states having statutes similar to our own, governing the appropriation of water, the learned district judge, in the sixth finding of fact, finds as follows: "I also find that said appropriations and use, as herein stated, were not only according to the custom of the place, but were each and all of them reasonable and just to the public, and to all claimants of water from Raft river, and that a greater claim by each would be unreasonable and unjust; also, that a claim of the same amount of water at all times of the year, or in years of extraordinary drought, would be unreasonable, not according to said customs or laws and unjust to other settlers on or claimants to the use of the waters

of said stream or streams. I further find that the volume of water which is the subject of these findings should be and is hereby held to be a common right in those so accustomed and entitled to their use, in the proportions herein declared." The court then proceeded to distribute the water thus held to be common property, or the right to the use thereof a common right, regardless of priority of appropriation. The parties who appropriated water in 1870 are not given priority of right over appropriations made in 1887. The court failed to determine the priority of right of any of the parties litigant, but, on the unstatutory theory of the use of water being a common right, decrees, by a sliding scale, the amount of water which each shall be entitled to at specified periods of the irrigating season, and, by some abstruse mathematical calculation, reduces, as the supply decreases, one party's amount one-third and another two-thirds for the same dates. The court then declares as follows: "These findings, and judgment to be entered in accordance herewith, to be subject to review, and with special reference to the provisions of the proposed constitution for the future state of Idaho, and the laws operative thereunder." The court thus sets at naught the positive statutes controlling the appropriation of water, and the decisions thereunder, and enters a judgment which he declares subject to review, and with special reference to a constitution not yet in existence, and statutes to be enacted under such proposed constitution. Five days after the findings of fact in this case had been filed, upon an *ex parte* application by one of the attorneys in the case, made by letter, the learned judge, at chambers, proceeded to review said findings, and directed the clerk to change one of the findings by awarding to one of the parties ten inches more water than the findings originally gave him. If the finding of facts and judgment in this case can be reviewed and changed upon an *ex parte* application made to the judge at chambers, the decree and judgment are not as final as the law intends they should be.

Mr. Freeman, in his work on Judgments (section 96), in referring to a judgment like the one under consideration, says: "The interest of society demands that there should be a termination to each controversy. Courts have no power, after

fully deliberating upon a cause, and ascertaining and settling the rights of parties, to add clauses to their judgments, authorizing the losing party to apply at a subsequent term to have the judgment against him set aside. If a vacillating, irresolute judge were allowed to thus keep causes ever within his power, to determine and redetermine them from term to term, to bandy his judgments about from one party to the other and to change his conclusions as freely and capriciously as a chameleon may change its hues, then litigation might become more intolerable than the wrongs it is intended to redress." The statutes of this state in regard to water rights evidently did not meet with the approval of the learned judge who tried this case. He brushes them aside, and evidently undertakes to make the judgment herein conform to his ideas of what the law ought to be, and in some future time to make it conform to a constitution and laws thereafter to be adopted and enacted. "As between appropriators, the one first in time is the first in right." The law is thus written. The law-making power, only, has the power to repeal or amend it. It cannot be repealed or amended by the court, but must be enforced as long as it remains the law, even if harsh and unjust. The court below should have determined the amount of water appropriated for a useful or beneficial purpose by each of the parties, and, in case any of the parties were not the original appropriators, the court should have determined the amount of water appropriated by the party from whom he deraigned title; should also have determined the date of each appropriation, and the priority of right of each of the parties, as the statute directs, to wit: "As between appropriators, the one first in time is the first in right." In determining the amount of water appropriated for a useful or beneficial purpose, it is proper for the court to take into consideration the number of acres of land susceptible of irrigation by the water so appropriated, claimed or owned by each of the parties, and the amount of water necessary to irrigate the same. The case is reversed, and remanded to the court below for a new trial in accordance with the views expressed in this opinion; and it is ordered that the appellants have and recover from respondents four-fifths of the costs of this appeal.

Huston, J., concurs.

Morgan, J., having been engaged as counsel in the court below in this case, did not sit at the hearing, and took no part in this decision.

### ON MOTION TO DISMISS.

Motions to dismiss the appeal were interposed by respondents, the Durham Land and Cattle Company, appearing by their attorney, Arthur Brown, and by A. and N. Bartholomew, appearing specially by their attorney, S. B. Kingsbury.  The court, not passing upon the same before the case was called for hearing upon its merits, announced that it would consider said motions and the case together.

HUSTON, J.—The motion to dismiss the appeal in this case is moved upon several grounds by the attorneys of the various groups of defendants. We have examined them with considerable care, in connection with the transcript; and while some of the grounds might appear to be well taken, under a technical adherence to the rule of strict construction, we are advised by our statutes that we are to construe the same liberally, for the promotion of justice, and, acting under that injunction, we feel compelled to overrule the motions. It is urged that the notice of appeal was not served on all the adverse parties or their attorneys. The transcript shows that there were fifty parties to this action—five plaintiffs and forty-five defendants. The defendants were represented by some eight or ten different attorneys, several of whom resided outside of this state. It is evident the counsel for appellants made most strenuous efforts to make service on all proper parties or their attorneys, and, we think, succeeded, to the extent of bringing their case within the provisions of the statute. The courts of Idaho have been very liberal in extending license to practice to nonresident counsel, and it may well be questioned whether the provisions of our statutes in regard to service of papers extend beyond the territorial limits of the state. Be that as it may, the service in this case was, in our opinion, sufficient. It is objected that the bond on appeal is insufficient. This defect has been cured by the filing of a sufficient

bond, as provided by statute. Various other objections were urged, most of which have been withdrawn, and none of which, we think, were of weight to warrant a dismissal of the appeal.