(No. 5082. April 19, 1929.)

GEORGE CROCKETT, FRANK OGG, J. W. SMITH, B. H. HARTLEY, H. P. LARSON, LUCY STRICKER, ED. DOMROSE, C. E. EDMINSTER, MANGUS LARSON, ROBERT BROSE, Jr., CHRISTIAN PETERSON, NEPHI LARSON, FRANK P. KING, P. W. GORDON and C. M. OLSON, Appellants, v. HENRY JONES and W. H. TURNER, Respondents.

[277 Pac. 550.]

498

Wolfe & Nielson, for Appellants.

Walters, Parry & Thoman and John R. Keenan, for Respondents.

ADAIR, District Judge.—This action was instituted by appellants, who are appropriators of waters of Rock Creek, in Twin Falls county, to restrain respondents from changing the point of diversion and place of use of sixty inches of water to be diverted to and used upon land up the stream, some five miles' distant from the land to which it had theretofore been applied and decreed. The cause was tried and judgment originally entered in favor of appellants. Upon appeal this court reversed the judgment, and the cause was remanded to the trial court with instructions to take testimony on certain definitely stated issues. (42 Ida. 652, 249 Pac. 483.) A new trial was had, and subsequently judgment was entered in the trial court decreeing to respondents the right to make the desired change in place of diversion and use, from which judgment the cause is again here on appeal.

After the water right in controversy and the rights of appellants were initiated and decreed, the Twin Falls High Line Canal was constructed, crossing Rock Creek a considerable distance up the course of the stream. Ever since this canal was first utilized as a conduit for water, there has been a considerable quantity of seepage or return flow water in the creek below the canal crossing, so that there is at present a large head of water in the stream bed at the point therein where the respondent Jones has his diversion works, such water being largely in excess of his needs. The farms of the appellants lie up the country and above the canal so that seepage water therefrom is not available for the irrigation thereof. Jones has conveyed his water right to the respondent Turner, who proposes to use the same on lands also situated up the creek and above the canal. Appellants contend that such change in place of use would deprive them of water for the irrigation of their lands, since the natural surface flow of the creek above the canal is inadequate to

supply the irrigation necessities of appropriators having diversion works up the stream. They insist that since there is now ample water below their respective diversion points for the irrigation of the Jones ranch, the present flow being attributable to seepage or springs, Jones should be required to use such water as now flows in the stream, regardless of its source, and should not be permitted to transfer his decreed right to Turner for use on lands located above the point where such seepage water contributes to the flow of Rock Creek. Briefly summarized, that is the question which was before this court in the first instance, and appellants again attempt to present it for consideration and different determination on the present appeal.

In the prior opinion of this court it was held that this sixty-inch right awarded to Jones, with a priority of 1880, was a vested right in and to the waters of Rock Creek, and was such a property right that it could not be taken from him by the substitution of an uncertain seepage or backflow right without his consent, and that this was a right which Jones could sell. The cause was remanded with directions to take further testimony for the purpose of showing, if such were the fact, that prior to the advent of the High Line Canal the water decreed to Jones was supplied from springs arising along the course of the stream, above the point where the Jones water had been or was diverted at the time the subsequent appropriators made their appropriations of Rock Creek water, and below the point where it is now proposed to transfer the use of such water. The trial court was directed to make findings of fact thereon. In other words, this court held that if there were springs in the course of the creek, at the time the subsequent appropriators initiated their rights, which springs then supplied Jones with his decreed irrigation water, the proposed change in place of use would be injurious to appellants and would not be permitted. The effect of the decision, conversely stated, is that if such springs did not exist at such time and place, the transfer should be allowed, and the injunction then in force should be dissolved.

The issue passed upon in the original opinion will not again be considered by this court. It has frequently been held that where, upon an appeal of a cause, the law with reference to any question presented by such appeal is declared, it remains the law of that case upon any subsequent appeal. (*Phy v. Edgerton,* 44 Ida. 530, 258 Pac. 545, and cases therein cited.) See *Garber v. Nampa & Meridian Irr. District,* 19 Ida. 765, 116 Pac. 104, wherein it is said:

"The case has been here before. . . . . The facts are fully stated in that opinion and the law applicable to those facts is established conclusively for the purposes of this case, at least. The case was there remanded for a new trial, and the only question which arises now is whether or not the trial court followed the law announced in the prior decision of this court as applied to the evidence adduced on such new trial."

At the second trial of the instant case, held pursuant to the mandate of this court, several witnesses were examined. The testimony was conflicting on the issues defined in the opinion. The trial court found, in substance, that there were not, at the time of the Jones appropriation or thereafter, any springs arising within or adjacent to Rock Creek, between the points where Jones diverts his water and where it is proposed to divert the sixty inches of water involved herein for use upon the Turner land, which would or could render irrigation water available to the land of Jones, or supply any portion of his decreed right; that such condition existed at the time appellants made their appropriations from Rock Creek; that the only waters which arose in such sector of the stream, and which now arise therein, were and are solely seepage or back-flow waters which, prior to the construction of the canal and after the annual spring run-off has ceased, were and are uncertain, changeable, and negligible in amount, and did or do not furnish any adequate or definite water supply to Jones, nor enough water to supply his decreed right; and that in normal years, after the spring run-off, there were no springs supplying any irrigation water whatsoever to the lands of Jones.

██ While the evidence adduced was conflicting, it amply supports such findings. Judgment was entered in accordance therewith. The only issue presented by this appeal, therefore, is the correctness of these findings of fact. It is a rule in this jurisdiction, too well settled to permit of the citation of authority, that this court will not reverse the judgment of a trial court on a disputed issue of fact, based upon conflicting evidence.

It is now urged that the prior opinions in this case are susceptible of different constructions, and that they conflict with the holding of this court in *Washington State Sugar Co. v. Goodrich,* 27 Ida. 26, 147 Pac. 1073, which opinion quoted with approval the case of *Farmers' High Line Canal & Reservoir Co. v. Wolf,* 23 Colo. App. 570, 131 Pac. 291. That no misapprehension may hereafter exist as to the law governing applications to transfer points of diversion or use of water, we will attempt to briefly elucidate and amplify the views expressed in the former opinions in this case, to which we still adhere.

In the opinion on rehearing (42 Ida. 659, 249 Pac. 485), it was said:

"It was and still is the view of a majority of the court that the prior appropriator of the waters of a stream will not be permitted to change his point of diversion, if such change will injuriously affect the rights of subsequent appropriators as they existed at the time such subsequent appropriations were made; for a subsequent appropriator has a vested right to a continuance of conditions as they existed when he made his appropriation."

██ This rule is correct when applied to the instant case, because there have been no changed conditions in connection with either the physical condition of Rock Creek, or the *corpus* of the water therein above the canal, since these subsequent appropriations were made. Appellants, owning and maintaining their diversions above the point where the water now escapes from the canal into Rock Creek, have no interest in and can never utilize this new water supply on their lands. They are not concerned with what may be

done with this seepage water below their diversions. Jones had a vested property right in sixty inches of Rock Creek water with 1880 priority, which he could use upon his own land or sell to Turner for use elsewhere, if such transfer did not disturb conditions existing at the time appellants initiated their respective rights, and which still continue to exist there, unchanged and unaffected by this new seepage water. Appellants are not concerned with the fact that Jones might, after such sale, make a new appropriation or use of this new water on his original farm. This new Snake River water now finding its way, by reason of leakage, from the canal into the channel of Rock Creek, may be subject to appropriation by Jones or others, without affecting in any manner the vested rights of appellants. This new water in the stream may be only a transitory flow, of uncertain duration, and may cease if the canal is repaired and its bottom and banks rendered impervious in any manner, or the canal may be abandoned and a new one constructed elsewhere to avoid this large loss of valuable water. On the other hand, this seepage may continue indefinitely. What may happen in this regard is immaterial since it does not affect appellants' rights. The original decision of this case was in part to the effect that Jones was not required to abandon his 1880 priority right and accept in lieu thereof this uncertain seepage flow. If this seepage water should cease to flow at the Jones diversion point, he would thereafter have no water right whatsoever for his land, having transferred his 1880 decreed right to Turner. This, in substance, was the situation confronting the court when it promulgated its former opinions. Under these circumstances, it was correctly stated that the right to make the proposed change in use and diversion was governed by conditions existing at the time the subsequent appropriations were made.

However, under a different state of facts, it might be possible that subsequent appropriators on a stream would be injuriously affected by a disturbance of conditions existing at the time they made their appropriations, and also by a

change in place of diversion disturbing existing conditions at the time such transfer is attempted. The right to change the place of diversion and use of water depends upon and must be controlled by the facts of each particular case, and no inflexible rule applicable to all situations can be laid down. Therefore, to clarify the particular statement of law above quoted, we now declare and determine the rule, generally applicable, to be that junior appropriators have a vested right to a continuance of the conditions existing on the stream at and subsequent to the time they made their appropriations, and that no proposed change in place of use or diversion will be permitted when it will injuriously affect such established rights. This is in accord with the holding in *Washington State Sugar Co. v. Goodrich, supra.*

No error appearing in the record, the judgment is affirmed, with costs to respondents.

Budge, C. J., and Baker, D. J., concur.

GIVENS, J., Dissenting.—An examination of the original opinion in this case (*Crockett v. Jones,* 42 Ida. 652, 249 Pac. 483), discloses that the judgment was reversed for a number of reasons; The Utah Construction Company had not proven its right to do business in this state; neither the ownership nor the aridity of the various tracts of land had been established; and the trial court had failed to make findings on the condition of the stream, when the prior appropriations were made, before the High Line Canal was built.

In the record, as it first came to us, there was considerable testimony that, prior to the construction of the High Line Canal; sufficient water arose in, and returned to, the stream below the diversion points of the subsequent appropriators to supply Jones' right, and the majority of the court thought there should be a finding on that issue before the cause was finally determined. That this was the position of the "majority," I believe is fully disclosed in the last paragraph, of the former opinion, on page 657, and by the

opinion on rehearing; and therein the then majority discussed the rights of the parties if the evidence disclosed that Jones' right had been supplied from water returning to and arising in the stream prior to the construction of the High Line Canal.

The present majority, referring to the original opinion, says:

"In other words, this court held that if there were springs in the course of the creek, at the time the subsequent appropriators initiated their rights, which springs then supplied Jones with his decreed irrigation water, the proposed change in place of use would be injurious to appellants and would not be permitted. The effect of the decision, conversely stated, is that if such springs did not exist at such time and place, the transfer should be allowed, and the injunction then in force should be dissolved."

Such an inference may be drawn from the former decision, but nothing more than an inference. The law of this case was not determined in the former opinion. Much was said in the former opinion, but all the majority did was to send the case back for additional testimony and findings so that we would have all the facts in order to decide the very important and perplexing question we now have before us.

The findings of both trials are without dispute to the effect that since the completion of the High Line Canal, the inflow or return flow into Rock Creek from seepage water has been more than sufficient to satisfy Jones' right in full and that since that time the junior appropriators also have had an ample supply.

The former opinion held that Jones should not be required to substitute a back-flow right for a natural flow right from Rock Creek. That conclusion is correct. The precise point is, however, can Jones change his point of diversion, and that depends on whether such change will injuriously affect the junior appropriators. If the flow in the stream at the present time was the same as at the time the junior appro-

priators made their appropriation, there would be no injury, because the trial court found there was not then sufficient return flow to satisfy Jones' right. As the stream actually flows at the present time, however, there is sufficient seepage to satisfy the Jones' right, and to now permit the change will injure the junior appropriators.

In *Washington State Sugar Co. v. Goodrich,* 27 Ida. 26, 147 Pac. 1073, referred to in the briefs of counsel in the previous opinion but not in the opinion of this court, the court, passing on the question of what condition of the stream and the time when the condition of the stream must be considered as bearing on the rights of senior appropriators to change their point of diversion, quoted with approval from several decisions of the Supreme Court of Colorado, among them the following from *Farmers' High Line Canal Co. v. Wolf,* 23 Colo. App. 570, 131 Pac. 291:

"As against the change sought by petitioners, the junior appropriators had a vested right in the continuance of the conditions that existed on the streams *at and subsequent to the time* they made their appropriations, unless the change can be made without injury to such right." (Italics ours.)

In other words, this court said that if the change injures the junior appropriators with reference to conditions existing in the stream either at the time of the appropriation or at the time the change was sought, the change cannot be made.

Conceding that sufficient attention was not given to *Washington State Sugar Co. v. Goodrich, supra,* in the former opinion herein, I believe that the rule as laid down in that case is sound in logic and reason, and I do not believe this point was intended to be overruled in the previous opinion herein, for the "majority" in the first opinion herein were considering the law applicable to the condition of the stream when the junior appropriations were made, not the conditions when the change was sought. *Vide* second paragraph of opinion on rehearing, *Crockett v. Jones, supra,* 42 Ida.

652 at 659, 249 Pac. 483 at 485. Nor do I think the point made in the Goodrich case, *supra,* should be overruled.

Therefore the change in the point of diversion should not be allowed. (*Baca Ditch Co. v. Coulson,* 70 Colo. 192, 198 Pac. 272; *Fort Collins Milling Co. v. Larimer Irrigation Co.,* 61 Colo. 45, 156 Pac. 140; *Fort Lyon Canal Co. v. Rocky Ford Co.,* 79 Colo. 511, 246 Pac. 781; *Trinchera Ranch Co. v. Trinchera Irr. Dist.,* 83 Colo. 451, 266 Pac. 204.)

I am authorized to say that Wm. E. Lee, J., concurs with me in this dissent.

Petition for rehearing denied.