(No. 7143. December 21, 1944.)

CLIFFORD BEECHER, LOT UDY, ALBERT COTTLE, REUBEN WARD, C. L. SEARS, ART M. WARD, ESTHER PARKE, H. F. DEARDORFF, MAGGIE E. SCOTT, W. E. WILLIAMS, A. J. UDY, LARENZO DARRINGTON, GARRETT HUTCHINSON, C. S. GAMBLE, H. W. WICKEL, LEWIS WICKEL, RICH-ARD KOSSMAN, MRS. J. S. HUTCHINSON, E. R. PARISH, R. C. WAKE and F. M. KOSSMAN, Re-spondents, v. CASSIA CREEK IRRIGATION COM-PANY, INC., a corporation, and JAMES SPOFFORD, State Reclamation Engineer of the State of Idaho, substituted for E. V. BERG, who was Commissioner of Reclamation of the State of Idaho prior to January 4, 1943, Appellants.

[154 Pac. (2d) 507.]

4

Bissell & Bird, and Bert H. Miller, Attorney General, for appellants.

James R. Bothwell and H. A. Baker for respondents.

BUDGE, J.— Raft River is located largely in Cassia County, having its source in the mountains to the south and flowing north into Snake River. The water rights on Raft River and Cassia Creek are inter-related and have been heretofore adjudicated in the Federal court in the case of *Albion-Idaho Land Company v. Jobe Adams et al.* The decree in the above case was dated October 23, 1928, subsequently amended January 8, 1929. The Bar M Ranch lies on Raft River and below the confluence of Cassia Creek and Raft River. The irrigation waters appurtenant to the Bar M Ranch have been diverted from Raft River. Cassia Creek Irrigation Company, Inc., is a corporation and its stockholders include a majority of the water users from Cassia Creek. The corporation acquired the water rights appurtenant to the Bar M Ranch, which is approximately 15 miles below the source of supply to users of water on Cassia Creek. The corporation proposes to change the points of diversion for such water from the six diversion points located on the Bar M Ranch to 74 points of diversion of stockholders up-stream on Cassia Creek. In order to make this change the corporation filed its application with the Commissioner of Reclamation, upon which a hearing was duly had, resulting in the Commissioner of Reclamation issuing a permit to the corporation granting its application, from which an appeal was taken by respondents herein to the district court in and for Cassia County. Willard W. Wickel also filed an appeal from the Commissioner's order. The appeals were consolidated for the purpose of trial only. A separate decree was entered in each case. A trial de novo was had in the district court (*In re Department of Reclamation,* 50 Ida. 573 at 582, 300 P. 492 at 495), decree entered, from which an appeal is prosecuted to this court.

Appellants rely upon 14 assignments of error. We shall discuss only such errors as are deemed material. There are certain fundamental principles of law applicable to the facts of this case over which there should be no serious dispute.

 The primary controversy involved is bottomed upon the right of appellants to change the points of diversion of the Bar M water rights purchased by it, and to divert this water from the Bar M Ranch from points of diversion on Cassia Creek for use by its stockholders above respondents' points of diversion. The right to purchase the Bar M water right as well as the land, or either, and the right to change the points of diversion cannot be denied, provided the transfer of the water appurtenant to the Bar M Ranch and its distribution to the stockholders of appellant corporation will not result in a substantial injury to the users under their respective appropriations of the waters of Cassia Creek. A water right is real property and may be sold as any other property. One who purchases a water right acquires no better or greater right than his vendor. (Sec. 54-101, I.C.A.; *Twin Falls Canal Co. v. Shippen*, 46 Ida. 787, 271 P. 578; *In re Robinson*, 61 Ida. 462, 469, 103 P. (2d) 693, 696.)

Sec. 41-108, I.C.A. provides:

"The person entitled to the use of water may change the place of diversion, if others are not injured by such change * * * beyond that where the first use was made."
The right to change the point of diversion and place of beneficial use is also recognized by sec. 41-216, I.C.A., which is the statute under which this proceeding was instituted. For a discussion of this question reference may be had to the following cases: *Hard v. Boise City Irr. & Land Co.*, 9 Ida. 589, 76 P. 331; Note, 65 L.R.A. 407; *Bennett v. Nourse*, 22 Ida. 249, 125 P. 1038; *Hall v. Blackman*, 22 Ida. 556, 126 P. 1047; *Basinger v. Taylor*, 30 Ida. 289, 164 P. 522.

 The question here presented is whether other users, particularly respondents, of the waters of Cassia Creek and its tributaries are injured or will be injured by the change, or, as frequently said, substantially injured, not merely a fanciful injury but a real and actual injury. (*Hard v. Boise City Etc. Co.*, supra; *Montpelier M. Co. v. City of Mont-*

*pelier*, 19 Ida. 212, 113 P. 741; Kinney on Irrigation, Vol. 2, sec. 873, p. 1539.) In *In re Department of Reclamation,* 50 Ida. 573, 300 P. 492, it is said:

"The term 'injured' as used in the sections referred to * * * applies to injury to the water right of another."

Respondents' contention is that they will, if the change in points of diversion is made, sustain substantial injury to their respective water rights as a result thereof. The record discloses that some of the respondents base the injury they will suffer by reason of the rotation of the water, the system of rotation having been invoked and carried out by the appellant corporation. Others base their contention upon the fact that they will sustain substantial injury to their water rights by being deprived of the amount of water theretofore delivered to them under their various appropriations.

The rule would seem to be established that a change in point of use will not be permitted without limitations if the enlarged use in time or amount increases the burden on the stream, or decreases the volume of water in the stream to the injury of appropriators on the stream. Upon appeal from the action of the Commissioner of Reclamation the district court acquired full equitable jurisdiction over the controversy. The court in a proceeding of this character has jurisdiction to impose reasonable limitations and conditions to avoid injury. (*State v. Adair, District Judge,* 49 Ida. 271, 287 P. 950; *First Security Bank v. State,* 49 Ida. 740, 291 P. 1064; *In re Department of Reclamation,* supra; *In re Rice,* 50 Ida. 660, 299 P. 664.) Rotation above respondents' points of diversion could well lessen the volume of the stream and deprive them of their appropriation in point of time during which they were entitled to the use of the water.

The court decreed "that delivery of the transferred water by the said Cassia Creek Irrigation Company, Inc., a corporation, shall be by rotation; provided, nevertheless, that at all times when there is sufficient water in Cassia Creek and its tributaries to entitle the hereinafter named water users (which includes respondents) or each or any of them, to divert water under their decreed water right and priority date thereof, as established by the Federal decree entitled *Albion-Idaho Land Co. v. Jobe Adams et al*

* * * none of the transferred water shall be diverted above any such water users point of diversion on Cassia Creek or its tributaries when such diversion would leave insufficient water at such users headgate to fill his water right."

 If we understand the foregoing provision, it is to the effect that the delivery of the transferred water by the Cassia Creek Irrigation Company shall be rotated, provided, that if so rotated, there is sufficient water in Cassia Creek and its tributaries to entitle respondents, or each or any of them, to divert water under their decreed water rights and priority dates thereof. Appellant could not divert the waters, for instance, of respondent Beecher of April 30, 1872, above his headgate and rotate that water. Neither could the water be rotated unless at all times there is sufficient water in Cassia Creek and its tributaries to entitle the water users named in the Federal decree to divert water under their decreed water rights and the priority dates thereof, which was proper.

In other words, all appropriators on Cassia Creek are entitled to divert water from said creek according to their priorities in the same volume and under the same conditions as existed prior to the transfer of the waters of the Bar M Ranch. The watermaster is controlled in delivering the waters of Cassia Creek and its tributaries to the users thereof as set out in the Federal decree, and not otherwise. The appellant company was properly limited in the court's decree in the matter of rotation of the waters of Cassia Creek, otherwise it would result in a substantial injury to the water rights of respondents, and would be in violation of the Federal decree.

 It is the unquestioned rule in this jurisdiction that priority of appropriation shall give the better right between those using the water. (Art. 15, sec. 3, Const.) As between appropriators, the first in time is the first in right. (Secs. 41-101 and 41-106, I.C.A.; *Malad Valley Irr. Co. v. Campbell*, 21 Ida. 411, 18 P. 52; *Geertson v. Barrack*, 3 Ida. 344, 29 P. 42; *Kirk v. Bartholomew*, 3 Ida. 367, 29 P. 40.) Each junior appropriator is entitled to divert water only at such times as all prior appropriators are being supplied under their appropriations under conditions as they existed at the time the appropriation was made. (*Crockett v. Jones*, 47 Ida. 497, 277 P. 550;

*Morris v. Bean,* 146 Fed. 42.) The same rule applies whether appropriator is above or below other appropriators. When water has once been decreed and becomes a fixed right, the water must be distributed as in the decree provided.

There is evidence in the record that the Bar M water right did not reach the Bar M Ranch unless all rights were cut back to 1872. When the Bar M water right did not reach the Bar M Ranch, it was available to other appropriators according to their priorities. The Bar M water right of 2.6 s.f. dated April 30, 1872 was of the same priority as the rights of respondents Beecher and Sears. Their rights could not be disturbed by reason of the change of point of use of the Bar M water, neither could they be rotated. Respondents Beecher and Sears were entitled to a continuous use of the water as of the dates of their priorities if there was water in Cassia Creek and its tributaries above their points of diversion to supply their appropriations, and that would be true of the other appropriators, respondents here, provided the water was applied to a beneficial use.

While it would have been of material assistance had the trial court specifically found the particular facts causing material injury to each of the respondents, and specified definitely the cause, nature and extent of such injury, however, the cause should not be reversed for that reason.

Appellants' third assignment of error attacks the court's action in refusing to make requested Conclusion of Law No. 1, contending that the court had no jurisdiction to change the relative rights and priorities of the several parties as established in the Federal decree, and subordinate a prior right to a junior right. Appellants call attention to the rights of respondent Beecher in Finding of Fact No. 1. It is apparent from the decree that the trial court deviated from the Federal decree in this, he added up the various appropriations of the respondents, taking respondent Beecher as an example, who had a decreed right of 1.88 s.f. with a priority of April 30, 1872. He also testified he had a water right of 1873, 1879 and some of 1880. The court dated Beecher's entire rights as of 1872. There are other instances in the record which demonstrate the fact that the court advanced junior priorities as of the date of the first appropriation. The court should have followed

the Federal decree and fixed the priorities as of the same date as fixed in the Federal decree to avoid unnecessary confusion in administering the water. The decree should be amended in this respect.

Appellants complain the court erred in making Finding of Fact No. 8 for the reason that respondents' Exhibit "H" affirmatively shows that all respondents except C. S. Gamble had signed and executed said exhibit, and had agreed to subscribe for stock in the Cassia Creek Irrigation Company more than four months prior to the appearance of Gilbert Sussman before the meeting held at Malta, and that the finding is not supported by the evidence.

We are not prepared to hold in the face of the evidence that respondents, or any of them, were estopped upon the ground that all of them except Gamble subscribed for stock in appellant company, and signed what is designated as the non-interference or non-disturbance agreement. It is clear from the record that the subscription for stock was made and the non-interference agreement signed with the distinct understanding that what are known as the old water rights, or the prior appropriations by water users, would not be in any way jeopardized by reason of the change in diversion or the transfer of the Bar M water rights. It was distinctly understood and agreed that all existing prior rights would be supplied irrespective of the change in the point of use.

Appellants urge that the court erred in making that portion of Finding of Fact No. 9 [10] reading as follows: "that when the total flow of Cassia Creek is less than 21.54 cubic second feet of water at the three-way diversion point on Cassia Creek, the water rights which are sought to be transferred herein and are described in Paragraph IV hereof, are no longer good to any extent and should be disregarded."

Meaning the Bar M water right should be disregarded because it would not reach the Bar M Ranch.

Finding No. 10 should be amended by the court by inserting after the words "Cassia Creek" in the third line of the above finding, the following: Measured with no diversion from the creek except to satisfy the Bar M decree with

priority of April 30, 1872, and the Beecher, Sears and Ward decrees of equal priority.

Respondents contend they had been accustomed to receive, in the order of their respective priorities, the entire flow of the stream when it did not exceed the transmission losses below their points of diversion, for the reason that at such time the water does not reach the Bar M Ranch, and would revert to the junior appropriators according to their priorities. (*Raymond v. Wimsette* (Mont.), 31 P. 537; *West Point Irr. Co. v. Moroni Etc. Ditch Co.* (Utah), 61 P. 16; *Beaverhead Canal Co. v. Dillon Electric L. & P. Co.* (Mont.), 85 P. 880; *Cleary v. Daniels* (Utah), 167 P. 820; *Fernstermaker v. Jorgensen* (Utah), 178 P. 760; *Dameron Valley Etc. Ct. v. Bleak* (Utah), 211 P. 974; *Dern v. Tanner* (Mont.), 60 Fed. (2d) 626.)

 The appellant company seeks to add the 21.54 s.f. to the amount appropriated by the Bar M Ranch to be delivered to the stockholders of its company. It might be observed here that in the original articles of incorporation the appellant corporation made claim to the water saved and conserved. At a special meeting of the stockholders of appellant corporation held April 11, 1940, at Malta, a resolution was adopted wherein it was resolved "that * * * the Board of Directors shall not assert any rights on behalf of the corporation nor shall the corporation hereafter assert any rights to any water 'saved' as a result of such change in point of diversion and place of use." In other words, appellant disclaimed any right, claim or ownership in or to the salvage water. It would therefore seem consistent to conclude that it conceded the salvage water would be subject to appropriation and use by junior appropriators.

■ We are of the opinion that appellants are incorrect in their statement, under assignment of error No. 7, that Finding of Fact No. 14 is immaterial. It involves the transfer of .8 s.f. of water conveyed to James C. Hitt and John R. Hitt by Albion-Idaho Land Company. Appellant corporation, in its application for transfer of the Bar M water, included the above right which it did not own and which was not owned by the Bar M Ranch. By inserting the right in its application appellant sought to increase its water to be transferred by .8 s.f. with priority date of May 31, 1874.

This right should not be taken into consideration by the court in this proceeding as belonging to the Bar M Ranch.

If we understand the point sought to be made by appellants under assignment of error No. 8, it is that the court erred in finding that the Certificate of the Department of Reclamation conferred rights not granted by the Federal decree, and permitted their use longer than the decree allowed. It is stated in said certificate that "said water to be limited at any time to an amount actually needed and beneficially used for such purpose, and shall not exceed the following amounts," and then follows the enumeration of the amounts and the dates of use without limitation. The Federal decree fixes the amounts with limitations, and in the court's decree the amounts are also fixed with limitations. We do not think it is such prejudicial error as would warrant a reversal of the cause. The rights of the parties are definitely fixed by the court's decree as they are fixed in the Federal decree, and it is the decrees that are the guiding stars to be followed by the watermaster.

It is urged that finding No. 16 is not a finding of fact, but a conclusion of law. We do not feel there is any merit in this contention. It is further urged that finding No. 16 contradicts finding of fact No. 9. A careful examination of these two findings discloses no substantial conflict. Finding No. 9 is a mere recital of the point of diversion of the waters of Cassia Creek and, in the event of such diversion, a saving in transmission loss will result; that the appellants do not claim the water so salvaged, and that it would be available to strengthen all water rights. In finding No. 16 it is substantially found that to change the point of diversion and transfer the waters of Cassia Creek without limitation, as was done by the Commissioner of Reclamation, whose certificate does not comply with the Federal decree, in that the Federal decree contains certain limitations in the right of use, and the certificate issued by the Commissioner of Reclamation contains no such limitations. The trial court concluded that the Department of Reclamation should issue a new certificate in accordance with the Federal decree.

After a careful consideration of the record we are not disposed to reverse the decree and order a new trial, but to remand the cause with instructions to the trial court to

modify its findings of fact, conclusions of law, and decree in accordance with the views herein expressed, and as so modified the decree is affirmed. Costs to respondents.

Holden, C.J., and Givens and Dunlap, JJ., concur.

Ailshie, J., concurs in the conclusion.