294 P.2d 1088

Carl FOLLETT, Plaintiff-Appellant,

v.

TAYLOR BROTHERS, a copartnership composed of D. A. Taylor and W. D. Taylor, as firm members, and D. A. Taylor and W. D. Taylor, Defendants-Respondents.

No. 8167.

Supreme Court of Idaho.

Feb. 17, 1956.

Rehearing Denied March 28, 1956.

S. T. Lowe, Kales E. Lowe, Burley, Robert M. Kerr, Jr., Blackfoot, for respondents.

Ben B. Johnson, Preston, Merrill & Merrill, Pocatello, for appellant.

SMITH, Justice.

Appellant seeks relief against respondents:

(1) For damages to appellant's 1948 crops allegedly caused by respondents' wrongful diversion of irrigation water from Raft River to which appellant alleges entitlement by reason of his prior decreed water rights; and

(2) To enjoin respondents from diverting from Raft River upon their lands by their newly constructed diversion works or otherwise, any of the water of said river when the decreed rights of appellant are not filled and the water is needed by him for irrigation uses.

The issues were framed by appellant's amended complaint and respondents' answer thereto, respondents' cross-complaint and appellant's answer thereto. The facts and matters in issue are essentially as hereinafter set forth.

Raft River is located largely in Cassia County, flowing northerly into Snake River. Appellant's decreed water rights involved in this proceeding are appurtenant to his 1,400-acre ranch situate in the Raft River watershed.

Respondents' 3,000 acre Bar M Ranch is situate southerly from appellant's ranch extending southerly on both sides of Raft River some six miles, but is below and extends northerly from the confluence of Raft River and Cassia Creek. The most northern portion of respondents' Bar M Ranch is situate some six miles southerly and upstream from the southern portion of appellant's ranch.

The so-called Heglar Ranch, a 160-acre tract, is a part of the most northern or downstream portion of respondents' Bar M Ranch.

Water rights for the irrigation of appellant's lands were adjudicated in favor of appellant's predecessor, January 21, 1913, by the Sweetser decree, in the action of Sweetser Farms, Ltd., v. Cotterell, et al., in

the Fourth Judicial District in and for Cassia County, in amounts (c. f. s. indicating cubic feet of water per second of time) and dates of priority as follows:

| | |
|---|---|
| 10.1 c. f. s. | April 29, 1883, |
| 3.8 c. f. s. | April 1, 1886, |
| 21.0 c. f. s. | January 25, 1908. |

Later, water rights on Raft River and Cassia Creek were adjudicated in the action of Albion-Idaho Land Company v. Jobe Adams, et al., in the United States District Court, District of Idaho, Southern Division. The court by its decree therein, referred to herein as the Federal Decree, filed October 23, 1928, adjudicated water rights to appellant's lands, then owned by his predecessor, International Mortgage Bank, in amounts and with dates of priority as decreed by the Sweetser decree. The Federal Decree further provides that the water, for the purpose of satisfying those rights so decreed to appellant's lands, shall be taken from Raft River at the Heglar Ranch.

The court by the Federal Decree also adjudicated the water rights to the Bar M Ranch in the amount of 34.8 c. f. s. of water from Raft River and Cassia Creek with dates of priority ranging from April 30, 1872 to November 13, 1886, with 32.2 c. f. s. of those rights effective only during the period from April 1 to July 1 of each year. This left 2.6 c. f. s. effective for the balance of each irrigation season.

Cassia Creek Irrigation Company, Inc., on April 1, 1939, was the owner of the Bar M Ranch. Respondents were stockholders in such irrigation company and respondent D. A. Taylor was a director thereof. On that date, April 1, 1939, such irrigation company transferred all of the aforesaid water rights, adjudicated to the Bar M Ranch, to landowners who diverted waters above the confluence of Raft River and Cassia Creek, at points of diversion varying up to some 15 miles upstream on Cassia Creek. Transfer approved, Beecher v. Cassia Creek Irr. Co., 66 Idaho 1, 154 P.2d 507. Prior to such transfer, water additional to the amounts adjudicated to the Bar M Ranch, were required to overcome transmission losses to points of diversion; for instance, delivery of the 2.6 c. f. s. of water to the Bar M Ranch on and after July 1st of each year required not less than 22 c. f. s. of water to be emitted from Cassia Creek to flow down Raft River. Those waters as well as other accumulations of water which flowed down or percolated back to the river, flowed down through the Heglar Ranch, below the main Bar M Ranch and were used in making distributions of water rights downstream, including the water rights adjudicated to the lands which appellant owns.

May 24, 1946, respondents purchased from Cassia Creek Irrigation Company, Inc., the Bar M Ranch, but without the adjudicated water rights theretofore decreed to said lands by the Federal Decree, since these rights had been separated from the lands and transferred upstream as aforesaid.

During the year 1947 respondents, owners of the Bar M Ranch, constructed a dam to

be used as a headgate in Raft River channel, in the form of concrete abutments to hold flash boards. Respondents, during the 1948 irrigation season, by use of such concrete dam and by use of a pole dam constructed about 1½ miles further downstream, proceeded to divert onto their Bar M Ranch lands all of the water flowing in Raft River after high water season, at such places of diversion. Appellant asserts that respondents thereby deprived him, appellant, of his adjudicated waters necessary for crop production during the year 1948, causing his 1948 crop loss complained of.

At no time prior to 1948 were the waters of Raft River interfered with as by the attempt of respondents during that year, after high water season, to divert onto their lands all of the water of Raft River then flowing in the stream above the Heglar Ranch. At no time prior to 1948 had the delivery of water to appellant's ranch been so interfered with. There appears to have been waters available to apply to the adjudicated rights of appellant's lands.

The record shows that waters which were made appurtenant to the Bar M Ranch by the Federal Decree augmented and increased the waters in Raft River below the main Bar M Ranch properties, i. e., at the Heglar Ranch, by percolation and return flow and in instances by nonuse by the owners.

Respondents during 1947 filed an application with the Department of Reclamation of the State of Idaho for a permit to appropriate 60 second feet of water of Raft River for irrigation purposes, with points of diversion above appellant's lands and above the Heglar Ranch, the waters thereby to be diverted to cover a greater area of lands than theretofore. Respondents set forth in such application for permit that the water applied for had been appropriated and used on their Bar M Ranch lands since March 21, 1941.

Respondents in their cross-complaint alleged that on or about April 1, 1941, their predecessors in interest and they, respondents, appropriated for use in and upon the Bar M Ranch lands all the water flowing in Raft River at the south boundary line of said lands, amounting to 3,000 inches or 60 c. f. s. The water of Raft River thereby affected was the flow of the river above or south of the Heglar Ranch. Respondents further allege their ownership of the use and of the right to the use of said water under claim of adverse possession.

Respondents based their claim to the 60 c. f. s. of the waters of Raft River, superseding the old adjudicated rights of appellant, and in bar to appellant's claimed prior decreed rights to the waters of Raft River, singularly by reason of a restrictive provision contained in the Federal Decree hereinbefore referred to, which reads as follows:

"Provided, however, that the water for the purpose of satisfying the rights of said International Mortgage Bank

shall be taken from Raft River from what is known as the Heglar Ranch, and that the said International Mortgage Bank shall not claim the right to have any of the water above the Heglar Ranch used for the purpose of satisfying the amounts given them by virtue of the decree aforesaid." (Then follows land description of the Heglar Ranch.)

On the other hand appellant likewise depends upon the Federal Decree in protection of his adjudicated rights to the waters of Raft River and particularly upon the provisions thereof as follows:

"* * * at all times when the water hereby decreed is not actually used upon the land to which the same is hereby decreed, the said water must be permitted to flow down the stream for the benefit of junior appropriators." (From paragraph 18 of said decree.)

"And it is further ordered, adjudged and decreed, that the rights of each of the parties hereto, hereinafter mentioned and set out is the right to divert and use the water of Raft River in accordance with the priorities hereinafter set out and not otherwise, and that at such times as there shall be an insufficient amount of water flowing in said Raft River to fill and supply all of the rights hereinafter mentioned and set out that the various parties hereto shall be entitled to

receive their various amounts of water hereinafter mentioned in accordance with the priorities hereinafter specifically set out." (From paragraph 19 of said decree.)

"It is further ordered, adjudged and decreed that each of the parties hereto, both plaintiff and defendants, cross-complainants and intervenors, together with their heirs, successors, assigns, agents, servants and employees, are hereby severally and particularly restrained and enjoined from using, attempting to use, diverting or attempting to divert any of the waters of said Raft River or its tributaries as hereinbefore defined and set out, in any manner except as hereinbefore provided and set out and in strict accordance with the terms of this decree." (From general provisions of said decree.)

The trial court granted respondents relief under their cross-complaint. The court limited respondents' asserted right to the waters of Raft River to 2,000 inches or 40 c. f. s. with date of priority of April 1, 1941, to be diverted from the river above or south of the southern boundary of the Heglar Ranch; also restrained appellant from using or diverting any of such waters so decreed to respondents and from molesting respondents' dams and diversion works.

The trial court denied appellant any relief and dismissed his complaint. Appellant perfected appeal from the resulting judgment.

The controversy in the case, presented by the issues, and saved by appellant's specifications of error, is:

Whether or not respondents may divert the waters of Raft River pursuant to any appropriation or attempted appropriation subsequent in time to appellant's prior decreed water rights, or otherwise divert the waters of said river, at any time when appellant's rights are not filled and he has beneficial use for the water.

The question of respondents' claimed ownership of the right to the use of waters of Raft River, based upon their asserted adverse possession and use thereof as against the rights decreed to appellant's lands, and the trial court's decree thereon, must be initially disposed of.

The trial court found (1) that ever since and including the year 1941, *during the high water period of each year,* excepting a portion of the year 1948, respondents had diverted and used approximately 2,000 inches or 40 c. f. s. of the waters of Raft River for irrigation purposes under a claim of right, adversely to all the world; also, following such finding, (2) that respondents are the owners of the use and the right to the use of 2,000 inches or 40 c. f. s. of the waters of Raft River with date of priority of April 1, 1941.

The trial court entered its decree accordingly, without limiting respondents' right to the use of such waters, to flood waters, during the high water period of each year.

The record does not sustain the aforesaid findings of the court nor its decree. The record shows by the testimony of one of respondents that when respondents purchased the Bar M Ranch during May, 1946, the ditches were grown up and not good, and that they had "quite a little time the first year or two to spread this water." Then they built the concrete dam during 1947, with flash boards to divert the water, and built large ditches with a bulldozer outfit. The testimony of said respondent then shows that at least up to that time respondents had used mostly flood waters.

"Q. And you built that cement dam, concerning which they have been talking, in nineteen, forty-seven; was it? A. I think it was.

"Q. Up to that time you hadn't been using very much water on the Bar M Ranch? A. Well, there was quite a little water used on it.

"Q. In high water seasons? A. That's right."

The record is devoid of any showing of respondents' adverse use of waters decreed to appellant's lands during any of the period of time referred to in the trial court's findings, excepting during the year 1948. It was not until early June of 1948 and continuing during that season that respondents used the waters at times and under circumstances that the same interfered with appellant's use thereof. The pre-

scriptive period had not elapsed when appellant commenced this action February 1, 1949.

"A claimant asserting a prescriptive right to water must prove all the elements of prescription." Village of Fairview v. Franklin, etc., Irr. Co., 59 Idaho 7, 79 P.2d 531. This court in that case adopted the rule set out in St. Onge v. Blakely, 76 Mont. 1, 245 P. 532, 536, as follows:

"* * * two parties may at the same time be in possession of water from a creek and neither hold adverse to the other; each may justly claim the right to use the water he is using, without affecting the rights of the other, and therefore, in order to constitute adverse possession of water, *the burden is upon the claimant to show that his use of the water deprived the prior appropriators of water at times when such prior appropriators actually needed the water;* the use does not become adverse until it interferes with the use thereof by the prior appropriators, *and therefore proof merely that the claimant used water and claimed the right to use it is no proof whatever of adverse use.* [Cases.] While the elements of adverse possession of the two classes of property are the same [land and water], owing to the difference in their nature, the proof of hostile possession thereof necessarily differs. * * * (Italics ours.)"

See also Head v. Merrick, 69 Idaho 106, 108, 203 P.2d 608.

Respondents failed to prove their ownership of the right to the use of the waters of Raft River, whether flood waters or otherwise, adverse to appellant and his decreed rights.

 This case essentially involves the question of availability of the waters of Raft River and the right to the use thereof for irrigation purposes after high water and during the balance of the irrigation season. The record shows that the high waters subside about May 1st or during that month; also that water for irrigation of crops become vital the forepart of and during June and that lack of water then will cause crops to suffer or "burn up." Water flows in Raft River above the Heglar Ranch after the high water period of each year. The record shows that when respondents diverted that water during the irrigation season of 1948, such diversion depleted the supply of water available at the Heglar Ranch to fill appellant's decreed rights, which appellant and predecessor theretofore had actually diverted and used.

May respondents appropriate for use upon their lands 40 c. f. s. or if less, then all the waters flowing in Raft River above or south of the Heglar Ranch, after high water and during the balance of the irrigation season? If respondents be permitted so to do, then the water to become available at the Heglar Ranch for the purpose of filling appellant's decreed rights would be nil or largely insufficient. The testimony of one of respondents shows that respond-

ents intend to and will, unless restrained, take all the water in Raft River above the Heglar Ranch, as indicated by the following:

"Q. You intend to divert everything you can get; irrespective of the lower users, is that it? A. As long as we can use the water.

\* \* \* \* \* \*

"Q. You intend to take it? A. We intend to take it."

The matter now necessitates interpretation of the Federal Decree and its provisions hereinbefore set out upon which the respective parties rely.

The Federal Decree must be construed as a whole and given a construction as will harmonize with the facts and the law of the case. Boundary County, Idaho v. Woldson, D.C., 49 F.Supp. 600, affirmed 9 Cir., 144 F.2d 17; Whaley v. Matthews, 136 Neb. 767, 287 N.W. 205; Quigley v. McIntosh, 110 Mont. 495, 103 P.2d 1067; Yedor v. Chicago City Bank & Trust Co., 323 Ill.App. 42, 54 N.E.2d 728.

Respondents assert that the restrictive provisions contained in the Federal Decree prohibited appellants' predecessor and appellant from claiming the right to have any of the water of Raft River above the Heglar Ranch used for the purpose of satisfying the water rights decreed to appellant's lands; that under the Decree appellant's predecessor had, and appellant has, no right to the waters flowing in said stream above the Heglar Ranch to be used for such purposes, the effect of the Decree as to them being to separate Raft River in two parts, i. e., one, that portion above the Heglar Ranch, and the other, that portion below the Heglar Ranch; that as to them the water in the river above the Heglar Ranch was unappropriated, subject to respondents' appropriation thereof.

While respondents' land is a portion of that to which water rights were adjudicated in the action of Albion-Idaho Land Co. v. Jobe Adams, et al., and decreed by the Federal Decree entered therein, they admit that they do not possess the right to divert and use the water that was made appurtenant to their land by said Decree. Their predecessors in interest transferred those decreed water rights for use on land situate upstream on Cassia Creek.

Respondents assert the right to appropriate and divert waters of Raft River not involved in the Albion-Idaho Land Company case, nor adjudicated therein, nor decreed to any land covered by the Federal Decree.

Respondents do not stand in privity with their predecessor, owner of the land *with* the decreed water rights made appurtenant thereto, who was a party to that action, because respondents own the land *without* those decreed water rights; for such reason respondents stand in the position of strangers to that action.

Respondents would seek to avoid the mandates of the Federal Decree, requiring

the flow downstream for the benefit of junior appropriators of all the decreed waters of Raft River, when not in actual use upon the lands to which decreed; also imposing obedience to the rule of priority of appropriation of waters based upon the fact that all the waters of the stream were covered by said Decree, excepting perhaps some high water pre-irrigation season run-off.

If respondents consider that appellant is bound by the Federal Decree, then so are respondents, and they must permit the decreed water of Raft River to flow downstream to fill prior decreed rights as required by the mandates of said Decree.

On the other hand if respondents as strangers to the Albion-Idaho Land Company action claim that they are not bound by the Federal Decree, then as to respondents neither is appellant bound by the Decree; therefore, as to respondents, appellant would be and is a prior appropriator of the water of the stream above Heglar Ranch insofar as that water contributes to, and is necessary to, fill his decreed rights; and respondents could not become an appropriator prior in time to appellant.

Respondents, although strangers to the action of Albion-Idaho Land Co. v. Jobe Adams, et al., would accept the benefits of the restrictive provisions of the Federal Decree entered therein as operating in their favor, but would repudiate its accompanying, burdensome provisions. This they cannot be allowed to do.

Estoppel operates to prevent a party benefiting from a transaction, from questioning the validity and effectiveness thereof insofar as it imposes a liability or restriction upon him, and precludes one who accepts the benefit from repudiating the accompanying, resulting obligation. The application of the rule prohibits a party from establishing a right or title in himself under one provision or implication of an instrument while ignoring or contradicting another provision or implication which is destructive or fatally repugnant to such right or title. 19 Am.Jur., Estoppel, § 64, p. 688; 31 C.J.S., Estoppel, § 109, p. 347.

"Priority of appropriation shall give the better right as between those using the water;" Idaho Const. art. 15, §§ 3 and 5. "As between appropriators, the first in time is the first in right." Idaho Code, § 42–106; Malad Valley Irr. Co. v. Campbell, 2 Idaho 411, 18 P. 52; Geertson v. Barrack, 3 Idaho 344, 29 P. 42; Kirk v. Bartholomew, 3 Idaho 367, 29 P. 40; Brose v. Board of Directors, 20 Idaho 281, 118 P. 504; Brose v. Board of Directors, 24 Idaho 116, 132 P. 799; Crockett v. Jones, 47 Idaho 497, 277 P. 550; Beecher v. Cassia Creek Irr. Co., 66 Idaho 1, 9, 154 P.2d 507; Colthrop v. Mountain Home Irr. Dist., 66 Idaho 173, 157 P.2d 1005.

Appellant's decreed water rights are real property; such rights are appurtenant to appellant's lands to which the water represented thereby has been beneficially applied.

Idaho Const. art. 15, § 4; I.C. §§ 42–101 and 55–101; Hall v. Blackman, 8 Idaho 272, 68 P. 19; Paddock v. Clark, 22 Idaho 498, 126 P. 1053; Ireton v. Idaho Irrigation Co., 30 Idaho 310, 164 P. 687; Twin Falls Canal Co. v. Shippen, 46 Idaho 787, 271 P. 578; Beecher v. Cassia Creek Irr. Co., 66 Idaho 1, 154 P.2d 507.

## Damages

■ Appellant is an experienced farmer and knows methods of irrigation. The year 1948 he planted and cultivated various crops but in comparison, by use of some waters obtained, he produced a relatively small crop.

The record shows that high waters of Raft River subside about May 1st, or during May; that water becomes most vital for the irrigation of crops by the first of June, or thereabout, and that lack of water will cause crops to burn up.

During 1947 respondents constructed new diversion works in Raft River including the concrete dam. The spring of 1948, after the early season of high waters, they diverted the waters of said river onto their lands by means of the concrete dam and a pole dam, points of diversion above the Heglar Ranch, and above appellant's point of diversion at the Heglar Ranch. Particularly, during early June of 1948, respondents admitted taking all the water of the river and that they intended to take it, irrespective of the rights of lower users, including appellant.

When appellant was deprived of water he, together with state reclamation and water district officials, removed respondents' obstructions in Raft River, the first time about June 2nd, and the second time a few days later; but respondents rather promptly replaced the obstructions and continued taking the water.

Respondents assert that appellant should have irrigated his lands by use of flood water; that since he did not he cannot complain of the lack of water during irrigation season; also that he did not observe the highest duty of water in its application to his lands. Such theories would require appellant to anticipate in advance that respondents' intended to and would interfere with the flow of appellant's decreed water and thereby deprive appellant of his use thereof without due process. Appellant was not required and could not be required to anticipate any such wrong nor to make anticipatory provision therefor in advance. Appellant needed the water during the irrigation season after high waters and he was deprived of its use when so greatly needed at the beginning of the irrigation season to keep his crops from burning up. Furthermore, respondents admitted that they took the water, all that they could get, and that they intended to take it.

The trial court did not find the amount of appellant's crop damages. Appellant is entitled to a recovery therefor.

We deem it unnecessary to consider appellant's further specifications of error.

The judgment of the trial court is reversed and the cause remanded with instructions to the trial court to find the amount of damages suffered by appellant by reason of loss of and damage to his crops during the 1948 irrigation season, proximately caused by the acts of respondents in depriving appellant of waters or any part thereof decreed to his lands and to the use of which he was entitled, and in aid thereof, the trial court, in its discretion, or upon application of either appellant or respondents, may cause additional testimony to be taken; thereupon the trial court is instructed to enter judgment accordingly in favor of appellant and against respondents for appellant's damages so sustained; further, the trial court is instructed by entry of proper decree permanently to restrain and enjoin defendants from diverting waters of Raft River at any time when the decreed water rights of appellant to the waters of said stream are not filled and said water is needed by appellant for the purposes for which decreed.

Costs to appellant.

TAYLOR, C. J., and KEETON, PORTER and ANDERSON, JJ., concur.

On Denial of Petition for Rehearing

SMITH, Justice.

Respondents in their petition for rehearing direct attention to the Court's opinion which refers to the record as showing in effect that the high waters of Raft River recede by May 1st or during that month. Respondents urge that the trial court found in accordance with the evidence, "That the flood or high water period begins during the month of April, and flood or high waters begin to recede from the 1st to the 20th day of June of each year, depending upon the amount of snow in the mountains, the precipitation and the nature of the season. That in ordinary seasons all of the high water has passed by July 1st."

The testimony of the various witnesses, in effect, is as follows:

The high water period runs through April with no high water after the forepart of May; there is high water early in the spring during April; there is high water until the latter end of May, sometimes up until June, or likely into June, but never up to the first of July; the high water period is usually during May or until the 10th or 15th of June; high water is in May and part of June, up until the middle of June or 20th of June.

The record shows that the high waters of Raft River recede variously during the month of May, or by early or middle of June but not later than June 20th, depending upon the amount of snow in the mountains, the precipitation and the nature of the season. The portions of the opinion to which respondents object are corrected as last above set forth. Such correction in no

wise affects the balance of the opinion or the conclusions therein. Petition for rehearing denied.

TAYLOR, C. J., and KEETON, PORTER and ANDERSON, JJ., concur.